# EXHIBIT 1

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS

| | |
|---|---|
| MALACHY COGHLAN, )<br>Appellant )<br>v. )<br> )<br> )<br>NORMAN Y. MINETA, SECRETARY )<br>DEPARTMENT OF TRANSPORTATION )<br>Respondent ) | EEOC No.: 01A52152<br>Agency No.:<br>2004-18297-FAA-02 |

## DECLARATION OF CHRISTOPHER K. EARLY

I, Christopher K. Early, voluntarily and knowingly make the following statement.

1. I am the manager of the Policy Management Division (AHP-300) in the Office of Human Resources in the Federal Aviation Administration (FAA). My responsibilities include creating and providing guidance regarding the FAA's Core Compensation System.

2. Pursuant to Section 40122 (g)(1) of Title 49 of the United States Code, the FAA Administrator was authorized to create a personnel management system that addressed the unique demands on the agency's workforce, including greater flexibility in the compensation of personnel. In response to this mandate, the Agency convened a Compensation Committee. The committee created, in relevant part, the Core Compensation System Plan, which was subsequently approved by the FAA Administrator and available to employees in September 1999.

3. A key part of the system is that all employees would be converted from the general scheduled (GS) to pay bands. The structure of each pay band is similar to the GS system in that there are minimums and maximums assigned to each pay band. The salary ranges for positions in the core compensation system, as in the GS-system, is based upon the relative

system where changes within grades are automatic and are primarily driven by continued service, a key feature of the FAA's core compensation plan is that movement within the pay band is primarily driven by organizational and individual performance, which correlates to the Organizational Success Increase (OSI) and Superior Contribution Increase (SCI) pay adjustments. Another feature of the core compensation plan, which was widely publicized, is that the FAA Administrator has the flexibility to increase or decrease the pay range for positions based on an annual assessment of FAA pay rates versus pay rates for comparable positions in the private and public sectors.

4.  As part of the development of the core compensation plan, a policy was created to address how to distribute annual pay adjustments to employees who were at the maximum of their pay band. Chapter COMP-2.21C of the Human Resource Policy Manual (HRPM) addresses the issue of an employee reaching or exceeding a pay band maximum upon being converted into the core compensation plan. Essentially, those employees whose salary immediately met or exceeded the pay band maximum upon conversion, and whose salary met or exceeded the maximum solely because of conversion, became covered by a "grandfather provision" which allowed them to receive OSI and SCI pay adjustments as increases to their base pay. This provision only applied to the position that an employee held at the time of conversion, so if an employee voluntarily moved to another position or the pay rate fell within the pay range for his/her assigned pay band, then s/he would no longer be covered by the "grandfather provision." Although this chapter of the HRPM became effective March 12, 2002, the policy was actually implemented at the time the initial pilot program of the Core Compensation Plan began in July 1998, and continued in effect for subsequent conversions of employees to

2

the Core Compensation Plan, including the expansion of the program in April 2000 to all non-bargaining unit employees agency-wide. Employees were notified of this policy on numerous occasions through training and briefings delivered during 1998 through 2004, as well as posting of the policy on the core compensation website.

5. It is important to note that the date of conversion was not the same for all FAA employees. While non-bargaining unit employees were converted on April 23, 2000, the conversion for bargaining unit employees occurred later and depended on when the FAA and the relevant union reached agreement over implementation of the pay system. At the time of core compensation conversion in 2000, eighty non-bargaining unit employees were grandfathered. As of September 2004, approximately 27 non-bargaining unit employees were still grandfathered. In addition, approximately 990 bargaining unit employees were also grandfathered under this same policy as a result of their negotiated conversion to the Core Compensation Plan.

6. Under HRPM chapter Comp-2.4C: Annual Pay Adjustments, all employees whose salaries subsequent to the initial conversion met or exceeded the maximum of the pay band receive any pay adjustments as lump sum payments. This chapter of the HRPM also became effective on March 12, 2002, although the policy was actually implemented at the time the initial pilot program of the Core Compensation Plan began in July 1998, and continued in effect since that time. Employees were notified of this policy on numerous occasions through briefings and training during 1998 through 2004, and through posting of the policy on the core compensation website.

7. On a yearly basis and in conformance with HRPM Chapter COMP-2.2C, the FAA Administrator and Compensation Committee review data from a market survey, which

3

focuses on aviation and aerospace industries as well as incorporates market data from thousands of other companies to get a comprehensive picture of the private sector salary structure. This review allows the Administrator to determine whether the FAA's salaries are competitive with those of comparable positions external to FAA and should remain unchanged, or are not competitive and should be changed. As a result of this annual review process, the pay bands were increased in 1999, 2000, 2001, and 2002. However, based on the market surveys, the Administrator did not change the pay bands in 2003, 2004, and 2005. In fact, earlier than January 12, 2003, all FAA employees were notified through a broadcast message that the pay bands for 2003 would not be changed. Thus, for the first time, the consequences of the FAA Administrator having been authorized under the core compensation plan to increase, decrease or not change the pay bands was demonstrated to the workforce.

8. Decisions about the award of the annual OSI and SCI disbursements are typically made in December or January of each year, and the adjustments become effective in December or January of each year. Employees receive hard copies of statements of earnings and leave reflecting the OSI and SCI payments that they have received in January or February of each year. As of September 2004, there were approximately 813 employees who were at the current maximum for their pay band who would receive their OSI and SCI payments for 2004 as lump sum payments.

9. There are exceptions to these pay rules beyond that pool of individuals who were grandfathered. As of September 2004, there were approximately 2,765 employees in two bargaining units who exceeded the maximum rate for their pay bands, but who still were eligible to receive any pay adjustments as increases to their base pay. These base pay

4

adjustments were made pursuant to the National Air Traffic Controllers Association (NATCA) collective bargaining agreement for Engineers and the Professional Airway Systems Specialist (PASS) collective bargaining agreement for technicians. Each of these contracts contain articles specifying that employees in some positions covered by the collective bargaining agreements will receive any annual pay adjustments as increases to their "basic pay". In others words, due to collective bargaining agreements, there are employees in two bargaining units currently not covered by the provisions contained in HRPM, COMP-2.4C.

9.     As of July 2004, 5.3 percent of the 929 employees who were at the band maximum and covered by HRPM COMP-2.4C were under age 40, and 94.7 percent were age 40 or above. As of that same date, 4.8 percent of the 4,158 employees who were exempt from HRPM COMP-2.4C were under age 40, and 95.2 percent were age 40 or above.

I declare under penalty of perjury that the foregoing is accurate and correct.

Executed in Washington, DC on the 21st day of March in 2005.

Christopher K. Early, Manager
Policy Management Division
Office of Human Resource Management
Federal Aviation Administration
600 Independence Avenue, SW, 1st Floor
Washington, DC 20591

5

**FV Employees Paid Above Band Maximum:**

| Bargaining Unit | Total # Above Band Maximum | Number of employees "Grandfathered"[1] | Number of employees under negotiated provisions[2] | Number of employees under normal Core policy[3] |
|---|---|---|---|---|
| None (non-bargaining unit) | 45 | 27 | Not applicable | 18 |
| NATCA/Staff Support Specialists | 6 | 2 | Not applicable | 4 |
| AFSCME/ARA | 4 | 4 | Not applicable | 0 |
| NATCA/AF | 306 | 0 | 306 | 0 |
| NAATS | 985 | 981 | Not applicable | 4 |
| PASS/AF | 2,775 | 3 | 2,459 | 313 |
| AFGE | 2 | 0 | Not applicable | 2 |
| Total | 4,123 | 1,017 | 2,765 | 341 |

[1] The pay rate of these employees was at or above the maximum rate for their pay band solely as a result of their conversion to the Core Plan, i.e., they were not on pay retention prior to conversion to the Core Plan. They receive future pay adjustments as base pay increase, until such time as their pay falls within the range of pay for their position or they move to a different position.

[2] These employees are covered by a provision in a negotiated labor agreement that prescribes that all pay adjustments be made as increases to base pay.

[3] These employees are on pay retention not as a result of conversion to the Core Plan, i.e., they had a change to a position in a lower grade or pay band that qualified for pay retention under normal agency pay retention policy. They receive future pay adjustments as lump sum payments in accordance with the normal Core Plan policy.

Data as of September 2004, from Consolidated Personnel Management Information System

**FV Employees Paid At Band Maximum:**

| Bargaining Unit | Total # At Band Maximum[1] | Number of employees under normal Core policy[1] |
|---|---|---|
| None (non-bargaining unit) | 598 | 598 |
| NATCA/Staff Support Specialists | 22 | 22 |
| NATCA/Regional Offices | 3 | 3 |
| AFSCME/ARA | 56 | 56 |
| LIUNA | 11 | 11 |
| NAATS | 4 | 4 |
| JAGE | 2 | 2 |
| PASS/AF | 92 | 92 |
| AFGE | 25 | 25 |
| Total | 813 | 813 |

[1] All of these employees were paid at or below the band maximum at the time of conversion to the Core Plan, and are not covered by the Grandfather provision. Therefore, they receive future pay adjustments as lump sum payments in accordance with the normal Core Plan policy.

[2] The total number of employees at the band maximum has declined slightly from the 829 figure initially reported, due to attrition and subsequent job changes. The 813 figure reflects the current number of employees paid at the maximum rate for their pay band.

**Employees Paid at Band Maximum Versus GS Pay Rates**

| Employees at band maximum who are paid *more* than equivalent GS grade level[1] | | Employees at band maximum who are paid *less* than equivalent GS grade level[2] | |
|---|---|---|---|
| Number of employees | Percentage | Number of employees | Percentage |
| 551 | 68% | 262 | 32% |

[1] These employees are currently paid at a higher salary rate than the step 10 rate for the comparable GS grade level.

[2] These employees are currently paid at a lower salary rate than the step 10 rate for the comparable GS grade level. However, not all employees would have progressed to the step 10 rate if they had remained in the GS.

Data as of September 2004, from Consolidated Personnel Management Information System