UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MALACHY COGHLAN,
TIMOTHY O'HARA, et al.,

     Plaintiffs,

v.                                  C. A. No. 05-1476 (PLF)

NORMAN Y. MINETA, SECRETARY,
U. S. DEPARTMENT OF TRANSPORTATION,

     Defendant.

_____/

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Local Civil Rule 7(h), Plaintiffs, Timothy O'Hara and Malachy
Coghlan, file this opposition to the motion of Defendant, Norman Y. Mineta, to
dismiss or, in the alternative, for summary judgment.   As we show below,
dismissal under Fed. R. Civ. P. 12(b)(1) and12(b)(6) is unwarranted, and dismissal
under Rule 56 is inappropriate at this stage of these proceedings.   Plaintiffs'
factual allegations must be presumed true and should be liberally construed in their
favor. *See Leatherman v. Tarrant County Narcotics & Coordination Unit*, 507
U.S. 163, 164 (1993); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C. Cir.
1979).  Briefly, this Court has jurisdiction; thus, dismissal under Rule 12(b)(1) is
improper.  Furthermore, Plaintiffs have stated a claim upon which relief can be
granted, i.e. that defendant's pay practices discriminate on the basis of age.

Plaintiffs are entitled an opportunity to prove age discrimination under either a disparate treatment theory, or under a disparate impact theory, or both. To do so, they must have discovery. Finally, dismissal under Rule 56 is inappropriate before Plaintiffs have had an opportunity to take reasonable discovery.

<u>Applicable Principles: Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 56</u>

*1. Dismissal of Plaintiffs' Age Discrimination Claim under Rule 12(b)(1) is Inappropriate.*

This court has jurisdiction to decide a claim based on a federal statute if there is "any legal substance to the position the plaintiff is presenting." 13B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3564 (2d ed. 1984), cited in *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 519 (6th Cir. 2006). As the Supreme Court has stated:

> Dismissal for lack of subject matter jurisdiction because of inadequacy of a federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998), citing *Oneida Indian Nation of NY v. County of Oneida*, 414 U.S. 661, 666 (1974).

"[T]he Supreme Court has admonished courts to use the term 'jurisdiction' with more precision, describing the term as 'a word of many, too many meanings,'" *Kontrick v. Ryan*, 540 U.S. 443, 453 (2004) (quoting *Steel Co.*). *Primax*, 433 F.3d

at 518 (district court has subject matter jurisdiction to decide whether ERISA claim fails to state claim upon which relief can be granted).

Under these precedents, this Court has subject matter jurisdiction to determine whether the Federal Aviation Administration's (FAA's) pay practices as described in the amended complaint violate the Age Discrimination in Employment Act under theories of disparate impact and/or disparate treatment, and continuing violation.

### 2. Dismissal of Plaintiffs' Age Discrimination Claim Under Rule 12(b)(6) is Inappropriate.

A court "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002) (internal quotations omitted); *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). Rule 12(b)(6) tests the legal sufficiency of the complaint, not the facts that support it. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

Plaintiffs Coghlan and O'Hara have filed administrative complaints and their court complaint alleging age discrimination under theories of disparate impact, disparate treatment and continuing violation. Amended Complaint, paras. 29–32. They allege that the maintenance of certain features of the Core Compensation Pay System in 2004 and thereafter constitutes age discrimination under a theory of disparate impact (para. 29), that the FAA has maintained certain pay practices

knowing of their discriminatory effect on older workers (para. 30), and that the

maintenance of the pay practices described in the amended complaint constitutes a

continuing violation of the Age Discrimination in Employment Act (ADEA) (para.

31).  It is at least possible that Plaintiffs can establish age discrimination under one

or more of these theories.  It is by no means clear at this stage that the Court will

be required to deny relief under any set of facts Plaintiffs can prove.  *See*

*Swierkiewicz,* 534 U.S. at 514; *Chappell-Johnson v. Powell*, 440 F.3d 484 (D.C.

Cir. 2006) (noting discovery may uncover direct evidence of discrimination,

eliminating need to prove *prima facie* case).  *See also, Alexander v. Local 496*, 177

F.3d 394 (6th Cir. 1999) (policy that results in disparate treatment of a protected

class as a whole may state continuing violation).

Proof under a **disparate treatment** theory can be by direct or circumstantial

evidence, or by the burden-shifting method of proof set out in *McDonnell Douglas*

*v. Green*, 411 U.S. 792, 801–02  (1973).  *See*, *Chappell-Johnson*; *Whittington v.*

*The Nordam Group, Inc.*, 429 F.3d 986, 992–993 (10th Cir. 2005) (Applying

*McDonnell Douglas* in ADEA case challenging reduction in force).  Proof of age

discrimination under a **disparate impact** theory can be made by proving that an

employment practice that is neutral on its face in its treatment of different groups

of employees "in fact fall[s] more harshly on one group than another and cannot be

justified by business necessity."  *Int'l Brotherhood of Teamsters v. U.S.*, 431 U.S.

324, 335 n.15 (1977), cited in *Lumpkin v. Brown*, 960 F. Supp. 1339, 1352 (N.D. Ill. 1997) (acknowledging disparate impact theory could be used to prove age discrimination by federal agency).  *See Quinones v. City of Evanston,* 58 F.3d 275, 278–80 (7th Cir. 1995) (invalidating program that denied those hired after age 35 the opportunity to participate in the pension plan).[1]

The ADEA proscribes "not only overt discrimination but also practices that are fair in form, but discriminatory in operation.  The touchstone is business necessity."  *Lumpkin*, 960 F.Supp. at 1352, citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971).  Consistent with this proscription, the Supreme Court has recently held that employees can challenge as age discrimination employer decisions that have a disparate impact on older workers, provided they can show the employer's decision was not based on a reasonable factor other than age.  *See Smith v. City of Jackson*, 125 S.Ct. 1536, 1546 (2005).  Plaintiffs state a claim that the FAA's pay practice disadvantages older workers in violation of the ADEA.  Accordingly, the Court should not dismiss their claims under Rule 12(b)(6).  Plaintiffs have stated claims upon which relief can be granted.

*3. Dismissal of Plaintiffs' Age Discrimination Claim Under Rule 56 is Likewise Inappropriate Before Plaintiffs Have Had The Opportunity to Take Discovery.*

---

[1]   Where an individual would not have suffered the adverse treatment but for his/her age, it does not matter whether age was the sole criterion for the employer's decision. *See, e.g., Auerbach v. Board of Education*, 136 F.3d 104, 110 (2d Cir. 1998); *Huff v. UARCO*, 122 F.3d 374, 388 (7th Cir. 1997).

Section 623(a)(2) of the ADEA prohibits employer conduct that "limit[s], segregate[s] or classif[ies] his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(2). Section 633a, "Nondiscrimination on Account of Age in Federal Government Employment," requires that "*all personnel actions* affecting employees…who are at least 40 years of age….shall be made free from *any* discrimination based on age." 29 U.S.C. § 633a(a) (emphasis added).

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To determine whether a genuine issue of fact is sufficient to preclude summary judgment, a court must regard the non-moving party's statements as true, and accept all evidence and make all inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In this case, Plaintiffs have alleged facts that, if supported by evidence adduced in discovery, will refute defendant's asserted fact that the operation of its pay system does not disadvantage older workers. Plaintiffs should be afforded the

opportunity to conduct this discovery to prove their claims.  See Exhibit B,

Declaration of Louis Lanier, Ph.D.  Plaintiffs meet the requirements of a *prima*

*facie* case of disparate treatment: they are all substantially over 40 years of age,

they are supremely qualified for their jobs and for annual increases to their base

pay (which they received prior to the FAA's institution of the Core Compensation

Pay System), and younger employees are, upon information and belief, receiving

annual increases to base pay.  Moreover, Plaintiffs intend to be able to show,

through discovery, evidence that the FAA is aware that its pay practices

disadvantage older workers.  *See also General Dynamics Land System v. Cline*,

540 U.S. 581, 590 (2004) (noting that "all the findings and statements of objectives

[in the legislative history of the ADEA] are either cast in terms of the effects of age

as intensifying over time, or are couched in terms that refer to 'older' workers.).  In

addition, Plaintiffs have identified the specific pay practice which they allege

works the disparate impact upon them and other older workers at the FAA – the

failure of the FAA to include annual increases in base pay.

　　　　Under these circumstances, for the Court to decide summary judgment now

would be premature.  The Court should deny summary judgment and afford

Plaintiffs a reasonable opportunity for discovery.  *Chappell-Johnson*, 440 F.3d at

___, *citing Swierkiewicz*, 534 U.S. at 512 ("Before discovery has unearthed

relevant evidence, it may be difficult to define the precise formulation of the

required prima facie case in a particular case;" and noting, 440 F.3d at ___, that "discovery may even uncover direct evidence of discrimination, thus entirely eliminating the need to prove the prima facie case.").

### *Factual Background*

Plaintiffs are not in a position to dispute many of the facts alleged in *Defendant's Statement of Material Facts As To Which There Is No Genuine Dispute*, because many of the recitations therein are statements of purpose or intent, or are descriptive rather than declarative.

The same is true of Part III, *"Factual Background*," of Defendant's *Memorandum of Points and Authorities in Support of Renewed Motion to Dismiss Or, In the Alternative, For Summary Judgment* ("Def.'s Mem.").

Notwithstanding, Plaintiffs believe the following facts are essential to the Court's disposition of defendant's motion.

### *Introduction*

Plaintiffs are long-term employees of the FAA who are over 40 years of age, and thus within the class of persons protected by the ADEA.  Their compensation is at the top of their "pay bands" established by the FAA Administrator as part of the FAA's Core Compensation Pay System.  Defendant's Exhibit 2, "Core Compensation Plan Pay Bands."

In 1996, Congress authorized the FAA Administrator to develop a personnel system for the FAA, including a system of pay.  The FAA's Core Compensation Pay System was the result.  Under Core Compensation, individual positions are compensated at pay rates that fall within "bands."  Each band has a minimum, a midpoint and a maximum.  Defendant's Exhibit 2.

The FAA began implementing the Core Compensation Pay System with respect to some of its employees in 2000 as an alternative to the General Schedule, or "GS" system used by most executive branch agencies.  Defendant's Exhibit 17, para. 2, 5-6.  *See* http://www.opm.gov/feddata/html/paystructure/2004/fedPaySystems.asp.  GS employees generally work in positions to which the Office of Personnel Management has assigned a pay grade in the GS system.  Within that grade are a number of steps.  Thus, the minimum pay for an employee encumbering a job with a particular grade is the pay assigned to the lowest step within that grade.  The maximum pay is the pay assigned to the highest step.  *Id.*

Each year, Congress and the President determine whether to provide an across-the-board cost of living increase, or "General Increase," to GS employees.  See, Defendant's Exhibit 9, p. 3 of 5.  In addition, a GS employee may receive a within-grade increase if his or her performance over a specific period of time is at "an acceptable level of competence that warrants advancement" to higher pay, and

if agency resources permit. *See* 5 CFR Part 531, Subpart D, "Within Grade Increases." A within-grade increase usually results in the employee moving up to the next step within his or her grade. An agency may also reward superior performance with a "Quality Step Increase," or QSI. *See* 5 CFR Part 531, Subpart E, "Quality Step Increases."

The General Increase, the within-grade increase, and the QSI all result in an increase in an employee's base pay, and are reflected in his or her retirement, life insurance and other benefits. Even an employee working at the top step of his or her grade, with no possiblity of promotion to a higher graded position, will generally receive at least the General Increase each year if he or she has attained an acceptable level of performance. If the employee's performance is outstanding, he or she may receive a QSI. **Both increases will be reflected in the employee's retirement and life insurance benefits.**

*The FAA's Core Compensation System and Its Effect on Plaintiffs*

In fashioning a "personnel system" for the FAA, the FAA Administrator determined to adopt "pay bands," or ranges of compensation within which each General Schedule position "converted" to Core Compensation would be assigned. *See* Defendant's Exhibit 1, para. 3. In addition, the Administrator replaced the annual cost of living increase or General Increase, the within-grade increase and the QSI for those employees whose positions were "converted" to Core

10

Compensation.  Instead of the three General Schedule system increases, the FAA

established annual pay increases in the form of the Organizational Success

Increases (OSIs) and the Superior Contribution Increases (SCIs).   Defendant's

Exhibit 9, p. 2.   The Administrator has authority and discretion whether to award

OSIs and SCIs and, if they are awarded, to determine what the amounts will be.

    For employees like the Plaintiffs who were converted to Core Compensation

and whose pay is at the top of their pay bands, the OSIs and SCIs are not included

in their base pay.  Exhibit A, O'Hara Declaration, at paras. 2-4, 6.

    Not all FAA employees, however, have been "converted" to Core

Compensation.  Some FAA employees remain under the GS system, and continue

to receive cost-of-living, within-grade, and QSI increases.  And of the employees

who have been "converted," some still have OSIs and SCIs included in their base

pay, even though they are at the top of their pay bands.  This latter group includes,

but is not limited to, employees subject to collective bargaining agreements that

provide for OSIs and SCIs to be included in base pay even if the employees are at

the top of their bands.  Defendant's Exhibit 1, p. 7.

    Of the employees like the Plaintiffs here, who were converted and who are

at the top of their bands, and for whom pay increases are not included in base pay,

more than 95% are age 40 or older.  While the FAA Administrator determined to

provide OSIs and SCIs to many of them in years prior to 2006, they received no

increases to their base pay in 2003, 2004 and 2005, because their pay was at the top of their bands.  Exhibit A, O'Hara Declaration, para. 3.

In contrast, of those employees who were not converted, or who were converted and continue to have annual increases such as OSIs and SCIs included in their base pay, a significant percentage are under age 40 or younger than plaintiffs. These employees **did** receive increases to their base pay in those years.  Exhibit A, O'Hara Declaration, paras. 4, 6.

Plaintiffs intend to show that the result of this patchwork of pay practices disparately affects older workers.  Furthermore, the arguments advanced by the Defendant for dismissal of Plaintiffs' amended complaint are without merit, and the Court should deny the Defendant's motion.

## *ARGUMENT*

### A. Plaintiffs' Claims Are Timely, and the Court Should Reject Defendant's Argument that They Have Failed to Exhaust Their Administrative Remedies

1. Coghlan properly exhausted his administrative remedies with respect to 2004 compensation, and his complaints were timely.

Defendant argues that Coghlan's failure to challenge the Defendant's own characterization of the issue in his EEO administrative case, and his differing description of his age claim in the amended complaint, require dismissal of his complaint for failure to exhaust administrative remedies.  Def.'s Mem. at 17-19. The Court should reject this argument.

12

In Coghlan's EEO case before the Department of Transportation Office of Civil Rights (DOCR), DOCR described the issue as whether Coghlan was discriminated against "when the FAA implemented the Core Compensation System in 1998 that limited all employees at the maximum of their pay band to receive all future OSI and SCI awards as lump sum payments."  Def.'s Mem. 17-18, Defendant's Exhibit 5, p. 1.  In his court complaint, Coghlan alleged that: "As a result of the FAA's practice, Coghlan, O'Hara and similarly-situated FAA employees suffer a continuing age discrimination violation in the form of a continuing reduction in their base salary and their accrual of retirement benefits, which are based on base salary."  Amended Complaint, para. 18.

The wording of Coghlan's administrative age discrimination complaint was sufficiently related to the claim in his court complaint, and was more than sufficient to put his employer on notice that he was contesting the application of the Core Compensation System to older employees as age discrimination.  *See Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995) (holding that the Title VII claim in a lawsuit must be "like or reasonably related to the allegations in the charge and growing out of such allegations").  The fact that Coughlin's potential back pay remedy may be limited by his having alleged in this lawsuit that the January 2004 and January 2005 pay increases were not included in his base pay does not mean that his administrative complaint (Def.'s Exhibit 4) and his

amended complaint are inconsistent – indeed, they are virtually identical in claiming that the FAA's pay practice has "a negative effect on employees who are older."  Def.'s Exhibit 4, second page; Amended Complaint, paras. 29-31.

Likewise, Coghan's individual administrative complaint in August 2004 (filed as a formal complaint on September 27, 2004 (Defendant's Exhibit 4)) and his class administrative complaint filed with O'Hara in March 2005 are timely, because they alleged continuing violations of the ADEA.  *See Anderson v. Zubieta*, 180 F.3d 329, 335 (D.C.Cir. 1999) (holding that each paycheck calculated under a discriminatory policy states a separate, actionable act of discrimination).  *Accord: AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002) (holding that each discrete discriminatory act starts a new clock for filing charges alleging that act); *Shea v. Rice*, 409 F.3d 448 (D.C. Cir. 2005) (applying *Morgan* to allow claim of employee alleging that, as a result of a discriminatory pay policy, he received less compensation with each paycheck); *Forsyth v. Federation Employment & Guidance Serv*, 409 F.3d 565, 571 (2nd Cir. 2005).  *See also, Zuurbier v. MedStar Health, Inc.*, No. 05-CV-13, __ A.2d ___, 2006 WL 870949 at *13-14 (D.C. App. April 6, 2006) (applying *Morgan* to hold each paycheck was discriminatory event under D. C. Human Rights Act).  *Accord Bazemore v. Friday*, 478 U.S. 385 (1986).  *See also Albritton v. U. S. Postal Service*, Appeal No. 01A44063 (EEOC

Dec. 17, 2004) (allowing claim of employee that each paycheck was a wrong actionable under Title VII, citing *Bazemore*).

Finally, the fact that Coghlan and O'Hara did not formally notify the EEOC before filing this lawsuit is not fatal to their complaint. See Def.'s Mem. at 15 n. 10, 16. The EEOC's regulations require such notice where a complainant proceeds directly to court without having exhausted administrative remedies at his agency and the EEOC. 29 CFR § 1614.201(a). This regulation accords with section 633a(d) of the ADEA, which provides that when an employee has not filed an age complaint with the EEOC, he may not commence a civil action until he has given 30 days' notice to the EEOC. Here, Coghlan and O'Hara exhausted agency and EEOC administrative remedies with respect to both Coghlan's individual complaint and his and O'Hara's class complaints. Their "administrative remedies will [therefore] considered to be exhausted for purposes of filing a civil action," after the passage of the requisite number of days. 29 CFR § 1614(c).[2] The EEOC was, in any event, on notice of Coghlan's and O'Hara's class age claim at least as early as April 5, 2005, when the Defendant transferred Plaintiffs' class complaint to the EEOC, almost four months before Coghlan filed suit in this Court.

---

[2] 29 CFR § 1614(c)(1) through (3) provides that an individual can file a civil action after 180 days if the agency has not taken final action and the individual has not filed an appeal, or 180 days after the filing of a class complaint if the agency has not issued a final decision; or after final action on an individual or class complaint if the individual has not filed an appeal; or after issuance of a final decision by the Commission on an appeal, or 180 days after the filing of an appeal if the Commission has not issued a final decision. In this case, the Department of Transportation transferred Coghlan's and O'Hara's March 2005 class complaint to the EEOC in April 2005 and then moved to terminate the EEOC action on August 26, 2005, based on the pendency of Coghlan's individual lawsuit, which contested the same pay practices. Am. Compl., paragraphs 11-13.

Amended Complaint, para. 12.  Under these circumstances, the Court should reject the argument that Plaintiffs' failure to formally notify the EEOC of this lawsuit is fatal to their claims.

>    2. Coghlan and O'Hara properly exhausted their administrative
>    remedies with respect to 2005 compensation.

The same principles as stated above with respect to Coghlan's 2004 complaint apply to the class complaint he and O'Hara filed in 2005.  The March 2005 complaint was filed within 45 days of Plaintiffs learning that the FAA Administrator's unilateral pay increase in January 2005 would not be included in their base pay.  That class complaint followed a request for counseling on February 23, 2005, and alleged continuing discrimination with respect to pay commencing January 14, 2005.  Def.'s Exhibit 19.   Thereafter, O'Hara and Coghlan followed the processes established by the EEOC, including assignment of their case to an administrative judge until, upon FAA's motion, the administrative judge closed the case due to the pendency of this lawsuit as originally filed by Coghlan as an individual.

There was no point at which O'Hara and Coghlan failed to exhaust administrative remedies.  Instead, they have been diligent in attempting to consolidate and prosecute their claims and those of similarly situated employees. The Court should not dismiss their case for failure to exhaust administrative remedies.

*B. Sovereign Immunity Does Not Bar Plaintiffs' Disparate Impact Claim*

<u>Statutory provisions</u>

Section 623(a) of the ADEA provides, in subsection (1), that it is unlawful for an employer to "discriminate against an individual *with respect to his compensation, terms, conditions or privileges of employment*, because of such individual's age."  Subsection (2) further provides that it is unlawful for an employer "*to limit, segregate or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee*, because of such individual's age." (Emphasis supplied).

The language of the ADEA tracks Title VII, which provides, in 42 USC §§ 2000e-2(a)(1) and (2), that "it shall be an unlawful employment practice" for an employer to "discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin…" or "to limit, segregate or classify his employees…in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, etc…".

Section 2000e-16 of Title VII extends these prohibitions to federal government employment.  It provides that "All personnel actions [in the federal government]…shall be made free from any discrimination based on race, color, religion, sex or national origin."  Similarly, Section 633a of the ADEA extended the prohibition against age discrimination to federal government agencies.  *See* 29 USC § 633a(a), providing that: "All personnel actions [in the federal government]….shall be made free from *any* discrimination based on age." (Emphasis supplied).  *See Lagerstrom v. Mineta*, 408 F. Supp.2d 1207, 1212 (D. Kan. 2006) (Allowing disparate impact claim under ADEA against Department of Transportation; "The inclusive language of Section 633a(a) unequivocally expresses a waiver of sovereign immunity for any discrimination based on age, whether intentional or not.").

Thus, Section 633a "did not change the standard for establishing an ADEA violation, but simply extended the procedures and remedies available for vindicating age discrimination claims to employees of and applicants to the federal government."  *Cuddy v. Carmen*, 694 F.2d 853, 856 (D.C. Cir. 1982).  For example, in a "mixed motive" age case akin that described in Title VII, section 2000e-2(m) (employee demonstrates that his race, color, etc. "was a motivating factor for any employment practice, even though other factors also motivated the

18

practice," "[a] plaintiff is entitled to prevail even though age is not the *sole* factor in the employment decision." *Id.* at 858 n. 22.

Section 633a does not contain specific references to other substantive provisions of the ADEA. Nor does Title VII's section 2000e-16 contain specific references to other substantive provisions of that statute. To the extent section 2000e-16 refers to Title VII's other provisions, its reference is only, in subsection (d), to subsections (f) through (k) of Section 2000e-5, Title VII's civil enforcement provisions. Section 2000e-16 does not, for example, expressly incorporate the substantive definitions of unlawful employment practices and the exceptions thereto found in section 2000e-2(a) through (n) – provisions that are the "meat and potatoes" of the law. Section 2000e-2(a)(1), for example, sets out the basic definition of an unlawful practice by an employer; section 2000e-2(e) defines the *bona fide* occupational qualification defense; section 2000e-2(h) describes the *bona fide* seniority or merit system defense; and section 2000e-2(k) sets forth the burden of proof of an unlawful practice based on disparate impact.

Notwithstanding the absence of reference to these substantive provisions in Title VII's federal employment section 2000e-16 and its subsection (d), courts have construed the law to apply to federal employment as it does to private employment. *See e.g., Rochon v. Gonzales*, 438 F.3d 1211, 1219 ("Nothing in § 2000e-16(d) or § 2000e-5(g) [authorizing relief for intentional discrimination]

19

suggests § 2000e-3(a) [making retaliation an unlawful employment practice] is to be read differently when applied to the Government."). *See also Scott v. Johanns*, 409 F.3d 466, 469 (D.C. Cir. 2005) (noting that *Chandler v. Roudebush*, 425 U.S. 840 (1976) confirmed that, in extending Title VII to federal employees, Congress accorded them the same right to a trial *de novo* as private sector employees).

Furthermore, courts of appeal and the Supreme Court have recognized that federal employee plaintiffs can sue to redress unlawful practices based on disparate impact. *See Chandler,* 425 U.S. at 848 (noting subsection (d) "merely reflects the inapplicability of the provisions in [section 2000e-5(f) through (k)] detailing the enforcement responsibilities of the EEOC and the Attorney General"); *Phillips v. Cohen*, 400 F.3d 388, 397–99 (6th Cir. 2005) (African-American employees at Department of Defense challenged facially neutral promotion criteria); *Palmer v. Schultz*, 815 F.2d 84, 114–16 (D.C. Cir. 1987) (Female State Department employees challenged assignments and promotions); *Palmer v. U.S.*, 794 F.2d 534, 538–39 (9th Cir. 1986) (Forest Service employees could proceed with age claim under disparate impact theory); *Griffin v. Carlin*, 755 F.2d 1516, 1523–25 (11th Cir. 1985) (African-American employees challenged Postal Service promotion procedures); *Segar v. Smith*, 738 F.2d 1249, 1265–66 (D.C. Cir. 1984) (African-American DEA agents challenged pay, promotion, work assignment and disciplinary practices). *But see Arnold v. U. S. Postal Service*, 863 F.2d 994, 998–

99 (D.C. Cir. 1988) (older employees challenged aspects of Postal Service "career path policy" under ADEA; court of appeals declined to decide if disparate impact age claim could be made).

This Court should find that, after *Smith*, section 633a of the ADEA allows a plaintiff to assert a disparate impact claim.

*Smith v. City of Jackson* and Subsequent Court Decisions

In *Smith*, the Supreme Court, resolving a conflict among the circuits, held that employees may pursue a claim of age discrimination under a disparate impact theory. 125 S.Ct. 1536, 1540 (2005). Although *Smith* involved a local government employer, the D.C. Circuit had, in two cases involving *federal* employees, reserved the question of whether such a claim could be made – *Arnold*, 863 F.2d at 998– 99, and *Koger v. Reno*, 98 F.3d 631, 639 n. 2 (D.C. Cir. 1996) (assuming without deciding that plaintiffs can prove age discrimination by disparate impact).

Since *Smith*, two district courts in the District of Columbia have held that a federal employee may not pursue a claim of age discrimination under a disparate impact theory. In *Breen v. Mineta*, No. Civ.A. 05-654 (RWR), 2005 WL 3276163, at *7 (D.D.C. Sept. 30, 2005) (unpublished disposition), the court stated, without analysis, that there was no basis to conclude that the federal government had waived its sovereign immunity from disparate impact suits under the ADEA. In

*Silver v. Leavitt*, No. Civ.A. 05-0968 (JDB), 2006 WL 626928, at *13 (D.D.C.

Mar. 13, 2006), the court brushed off *Smith*, parenthetically describing the

Supreme Court's holding in *Smith* as "that disparate impact claims brought

pursuant to 29 U.S.C. § 623(f)(1), *a statutory provision that does not apply to*

*federal employers*, are cognizable under the ADEA." *Id.* at *13 (emphasis

supplied).  The *Silver* court cited *Hazen Paper Co. v. Biggins*, 507 U.S. 604

(1993), where the Supreme Court noted it had "never decided whether a disparate

impact theory of liability is available under the ADEA." 507 U.S. at 610.

However, that statement by the Supreme Court in *Hazen Paper* can, in light of

*Smith*, no longer be relied upon to support an argument that the disparate impact

theory is not available under the ADEA.

   Inexplicably, the district court in *Silver* recites, in addition to *Breen*, district

court cases decided after *Hazen Paper* but before *Smith* to support its argument

that the ADEA does not allow a disparate impact claim against the federal

government – i.e. *Evans v. Atwood*, 38 F. Supp. 2d 25 (D.D.C. 1999), and *Hyman*

*v. First Union Corp.*, 980 F. Supp. 38 (D.D.C. 1997).  2006 WL 626928, at *13.

But both cases relied on *Hazen Paper,* and neither discussed sovereign immunity.

*Hyman* involved a private sector employer.  *Evans* involved the U.S. Agency for

International Development, and the court there relied on lower court cases against

private sector employers, as well as *Hazen Paper*, to dismiss the disparate impact

ADEA claim.  Also inexplicably, *Silver* relies on *Smith's* statement – that "there is

nothing in *Hazen Paper* that precludes an interpretation of the ADEA that parallels

our holding in *Griggs* [*v. Duke Power Co.*, 401 U.S. 424 (1971)]" (2006 WL

626928, at *13–14, citing 125 S.Ct. at 1540)" – to hold that *Griggs* is

distinguishable because it involved a private employer.  To the contrary: *Smith*'s

statement, while not made in the context of a federal sector case, clearly endorses

the expansion of theories for an ADEA claim to include disparate impact, not their

contraction.

Plaintiffs submit that the Court should follow this more expansive

interpretation in this case involving a federal agency defendant.  While sovereign

immunity must be clearly waived, there is no doubt that Congress intended the

litigation theories available to private sector plaintiffs to be available to federal

employees as well.  *Cuddy*, 694 F.2d at 856.  This Court should liberally construe

the waiver of sovereign immunity in the ADEA.  *Forman v. Small*, 271 F.3d 285,

287 (D.C. Cir. 2001), *cert. denied* 536 U.S. 958 (2002).  In *Forman*, the Court of

Appeals held that Congress' use of unqualified language in Section 633a

authorized a claim of retaliation under the ADEA, even absent an express

provision for such a claim.  *See also Rochon*, 438 F.3d at 1219:

> We conclude the Congress clearly has waived sovereign immunity from
> claims of retaliation [under section 2000e-16(a) of Title VII, applicable to
> federal employment].  Nor did the Supreme Court in any way qualify its
> observation in *Morton v. Mancari*, 417 U.S. 535, 537 (1964), that 'the

substantive anti-discrimination law embraced in Title VII was carried over and applied to the Federal Government' through the addition of section 2000e-16 [of Title VII] in 1972.  *See also Dothard v. Rawlinson*, 433 U.S. 321, 331 n. 14(1977) (noting 'Congress expressly indicated the intent that the same Title VII principles be applied to governmental and private employers alike' (citing H.R. REP. NO. 92-238, at 17 (1971); S. REP. NO. 92-415, at 10 (1971)).

The reasoned discussion in *Rochon* is echoed in *Lagerstrom v. Mineta*, where the U. S. District Court for the District of Kansas (Vratil, J.) after reciting and analyzing the ADEA legislative history, concluded that:

> [B]y enacting Section 633a [of the ADEA], Congress intended to address both intentional and unintentional discrimination.  Senator Bentsen explicitly recognized that Section 633a emulated Section 717 [Title VII Section 2000e-16].  When Congress uses the same language in two statutes with similar purposes, particularly when close in time, it is presumed that Congress intended the same meaning for both statutes. [citations omitted] Section 633a, which closely followed Congress' consideration of the Title VII amendments, tracked Section 717(a) and (b) nearly verbatim.  The legislative histories of Section 717 and Section 633a indicate that Congress contemplated both intentional and unintentional discrimination.  Congress made an unequivocal waiver of sovereign immunity for both theories of liability under the federal sector ADEA.  408 F. Supp. 2d at 1210–11.

Analyzing the effect of the Supreme Court's 2005 decision in *Smith*, the court in *Lagerstrom* found that section 633a of the ADEA, requiring that "all personnel actions affecting employees…shall be made free from discrimination based on age," included claims of disparate impact:

> A plain reading shows that Section 633a(a) is more broadly phrased than Section 623(a) [the section applicable to private sector employment].  Where Section 623(a) refers to various categories of employment actions, Section 633a(a) generically protects federal employees from 'any discrimination based on age.'  Furthermore, the broad and inclusive phrasing of Section

24

633a is not dependent upon or constrained by the treatment of Section 623. Indeed, the federal sector provision is 'self-contained' and unaffected by other sections of the ADEA. *Lehman* [*v. Nakshian*, 453 U.S. 156, 168 (1981)]. The breadth of Section 633a(a) therefore necessarily depends upon its own terms – particularly the term 'discrimination.' *Id....*A waiver of liability does not require an explicit abrogation as to all potential theories of liability....[The Department of Transportation] does not point to any authority which suggests that Section 633a(a) waived governmental immunity only for disparate treatment. The inclusive language of Section 633a(a) unequivocally expresses a waiver of sovereign immunity for any discrimination based on age, whether intentional or not. 408 F.Supp.2d at 1211–13.

*Lagerstrom* distinguished *Breen*, noting that while the *Breen* court said it had "good reason to doubt" that employees have a disparate impact claim under the ADEA, it "did not deny the preliminary injunction because of that doubt…[but] because – assuming a disparate impact theory is available under Section 633a – plaintiff had not established a substantial likelihood of success on the merits." 408 F. Supp. 2d at 1213, citing *Breen*, 2005 WL 3276163, at *7.

Plaintiffs urge this Court to follow the enlightened reasoning of *Lagerstrom*, buttressed by the rejection of the sovereign immunity defense and the supporting rationale in the Court of Appeals' decisions in *Rochon*, concerning Title VII retaliation, and *Forman*, concerning ADEA retaliation. The Court should reject defendant's argument (Mem. 27-31) that section 633a of the ADEA applies only to claims that are "personal in nature" and that Congress did not expressly authorize suits based on the disparate impact theory. Applying the precedents discussed

above, the Court should hold that Plaintiffs can assert a disparate impact theory of

age discrimination against the federal government.

   *C. Plaintiffs' Disparate Treatment Claims Should Not Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim Until Plaintiffs Have Been Afforded the Opportunity to Take Discovery on Defendant's Motives and Knowledge Underlying Its Pay Practice Decisions, and on the Effects of the Actual Pay Practices Themselves.*

   Defendant cites statistics, which Plaintiffs have not had an opportunity to

review or confirm, to the effect that employees in the class Plaintiffs seek to

represent are not that much younger than Plaintiffs, and that therefore there is no

age discrimination in the FAA's pay system.  Even a small difference in age may

be "relevant to the ultimate question of age discrimination...[and is] but one factor

to be weighed…", *Whittington*, 429 F.3d at 995.  Furthermore, Plaintiffs should be

afforded the opportunity to test the FAA's assertions in discovery.  See Exhibit B

to this opposition, Declaration of Louis Lanier.  That it may be necessary to further

amend the complaint to conform to facts adduced in discovery is not a reason to

foreclose Plaintiffs' claims at this juncture.

*Conclusion*

   For the foregoing reasons, Plaintiffs respectfully request that the Court deny

defendant's pending motion to dismiss or, in the alternative, for summary

judgment.

Respectfully submitted,

_____

Barbara Kraft   D. C. Bar No. 358563
Kraft Eisenmann Alden, PLLC
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC  20004
(202) 783-1391
Fax (202) 783-1392

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MALACHY COGHLAN,
TIMOTHY O'HARA,
et al.,
            Plaintiffs,

v.                                                    C. A. No. 05-1476 (PLF)

NORMAN Y. MINETA, SECRETARY,
U. S. DEPARTMENT OF TRANSPORTATION,

            Defendant.
_____/

PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE

Pursuant to Local Civil Rule 7(h), Plaintiffs Timothy O'Hara and Malachy

Coghlan respond as follows to *Defendant's Statement of Material Facts As To*

*Which There Is No Genuine Dispute*, and state the material facts which they

believe are in dispute.  The following paragraphs are numbered through paragraph

31 to correspond with Defendant's *Statement of Material Facts*.  The remaining

paragraphs contain additional facts which plaintiffs believe are material.

Plaintiffs note that, for the reasons stated in their *Opposition* at pp. 5-8,

summary judgment is inappropriate at this stage of these proceedings.  Plaintiffs

should be afforded the opportunity to conduct discovery concerning the FAA's pay

practices and their effects before the Court entertains a motion for summary

judgment.

28

1. Plaintiffs do not dispute that pursuant to 49 U.S.C. Section 40122(g)(1), the FAA Administrator was authorized to create a personnel management system. The remainder of Defendant's paragraph 1 is a declaration of intent or motive which plaintiffs are not in a position to contradict absent discovery.

2. Plaintiffs do not dispute that the FAA created a Compensation Committee, which in turn created the Core Compensation Pay System. The remainder of Defendant's paragraph 2, first sentence, is a declaration of intent or motive which plaintiffs are not able to disprove or contradict absent discovery. Plaintiffs dispute that employees were aware in September 1999 that the Core Compensation Pay System would disparately affect older employees. See Exhibit A, Declaration of Timothy O'Hara, at paragraph 8.

3. Plaintiffs do not dispute that the Core Compensation Pay System resulted in the "conversion" of some General Schedule (GS) employees to pay bands. The remainder of this sentence in Defendant's paragraph 3 is descriptive and a declaration if intent, which plaintiffs are not in a position to contradict or disprove absent discovery.

4. Plaintiffs dispute Defendant's characterization in its paragraph 4 that "the structure of each pay band is similar to the GS system in that there are minimums and maximums assigned to each pay band." The GS system does not, upon information and belief, have "minimums and maximums." Each graded position

29

within the GS system, for example a GS-3 clerk or a GS-12 analyst, has "steps" within the grade, the lowest of which carries the minimum compensation for that grade, and highest of which carries the maximum compensation for that grade. Plaintiffs are not in a position to contradict or disprove the second sentence in Defendant's paragraph 4, that "the salary ranges for positions in the core compensation system, as in the GS system, are based upon the relative value of the work performed by each position."  For purposes of Defendant's motion only, plaintiffs do not dispute this assertion.

5. Plaintiffs disagree with Defendant's assertion, in its paragraph 5, that in the GS system, "changes within grades are somewhat automatic and are primarily driven by continued service."  Upon information and belief, and without the benefit of discovery, an employee's advance to the next "step" within his grade in the GS system is contingent not only upon continued service, but on performance that is at least satisfactory.[3]  Plaintiffs dispute the remaining "factual" allegations in Defendant's paragraph 5, because they are descriptive or statements of motive or intent which, without discovery, plaintiffs are not in a position to disprove.

6.  Plaintiffs do not dispute that the FAA Administrator has the authority to increase or decrease "the maximum pay range for positions."  Plaintiffs do not dispute this assertion with respect the FAA Administrator's authority to increase or

---

[3]  See, http://www.opm.gov/feddata/html/paystructure/2004/fedPaySystems.asp.

decrease the minimum pay and the maximum pay for the pay bands the FAA has created as part of the Core Compensation System.  Plaintiffs also do not dispute the authenticity of Defendant's Exhibit 2, a 4-page document consisting of what appear to be the minimum, midpoint and maximum compensation for pay bands A through M for years 2000 – 2005.  Plaintiffs cannot, absent discovery, understand or confirm the statements, at the bottom of the pages of Exhibit 2, that pay rates for FAA employees were "capped by law" in those years.  Plaintiffs dispute the remaining "factual" statements in Defendant's paragraph 5, because they are statements of motive or intent which, without discovery, plaintiffs are not in a position to disprove.

7. Plaintiffs do not dispute the existence of the FAA's Human Resources Policy Manual (HRPM) or Section COMP-2.21C thereof (Defendant's Exhibit 7). Plaintiffs believe the application of the Policy has had a disparate effect on older FAA employees.  Section COMP-2.21C provides that employees on **pay retention** (who had suffered an involuntary downgrade or a downgrade as a result of a reduction in force (RIF), Defendant's Exhibit 3, p. 5), whose base pay exceeded their pay band maximums when their positions are or were "converted," do not and did not thereafter receive any increases to base pay.  Increases they received – Organizational Success Increases (OSIs) and (Superior Contribution Increases (SCIs) -- were in the FAA Administrator's discretion and, if granted, were paid in

31

a lump sum.  In contrast, certain employees **not on pay retention** whose base pay after conversion to Core Compensation exceeds or exceeded their pay band maximums receive OSIs and SCIs as increases to base pay.  This latter group of employees are referred to as being "grandfathered."  Defendant's Exhibit 7, Section 1.   Similarly, plaintiffs do not dispute that employees on "**grade retention**" whose base pay exceeded their pay band maximums when their positions are or were converted are "grandfathered" for two years, received OSIs and SCIs as increases to base pay.  Defendant's Exhibit 7, Section 1, pp. 1-2.

8. Plaintiffs do not dispute the statement in Defendant's paragraph 8 that certain employees whose salaries exceeded the pay band maximum upon conversion to Core Compensation became covered by a "grandfather provision" that allowed them to receive OSI and SCI as increases to their base pay.

9. Plaintiffs do not dispute the statement in Defendant's paragraph 9 to the extent it asserts the following: An employee who was or is "grandfathered" upon conversion of his or her position to the Core Compensation Pay System will lose that "grandfathering" protection – i.e., OSIs and SCIs will no longer increase their base pay – if they voluntarily move to another position (presumably in a pay band, not a GS position) or if, as the result of the FAA Administrator's discretionary adjustment of the pay bands, their base pay now falls "within the pay range for his or her assigned pay band."  Defendant's paragraph 9.

10. Plaintiffs dispute the statement that "all employees whose salaries after the initial conversion exceeded the maximum of the pay band were to receive any pay adjustments as lump sum payments." Defendant's paragraph 10. This statement suggests that the FAA has applied its Core Compensation Pay System and its practice of not included pay increases in base pay to **all** FAA employees except those not in pay retention and those in grade retention, i.e. those who were "grandfathered." See paragraph 7 above. This is misleading for two reasons. First, FAA includes pay increases in base pay for some converted employees who are under Core Compensation. See Defendant's Exhibit 1, para. 9. Second, FAA continues to apply the GS system to many of its employees. The maximum base pay under that system is in some cases higher than the base pay of comparable employees, including plaintiffs, who have been "converted." Exhibit A, O'Hara Declaration at para. 2; Defendant's Exhibit 1, p. 8, note 2. See, Defendant Exhibit 9, stating "This Chapter [of the Human Resource Policy Manual, "Annual Pay Changes in the Core Compensation Plan"] applies to: All employees covered by the FAA Core Compensation Plan." Unlike pay increases to plaintiffs, pay increases to GS employees are included in their base pay for purposes of retirement, Thrift Savings Plan employer and employee contributions, life insurance, final annual leave payout at retirement, and other benefits. See note, *supra.*

33

11. Plaintiffs do not dispute that OSI and SCI disbursements, if determined by the FAA Administrator to be paid for a year, are made in January or early February.

12. Plaintiffs cannot test the factual assertions in Defendant's paragraph 12 without discovery. Paragraph 12 makes allegations of fact that are supported by the declaration of one person, Christopher Early (Defendant's Exhibit 1), to the effect that the FAA looks to private industry market data to "get a comprehensive picture of the community's salary situation." Defendant's paragraph 12; Defendant's Exhibit 1, Early Decl, p. 4, para. 7; Defendant's Exhibit 12, p. 19 (Administrator states goal is to ensure wages remain competitive with the private sector). However, in paragraph 3 of his declaration, Mr. Early states that the FAA Administrator looks to pay rates "for comparable positions in the private *and public* sectors." Exhibit 1, para. 3. Plaintiffs intend to propound discovery concerning the "data" the FAA uses to set pay rates for employees converted to Core Compensation. See plaintiffs' exhibit B to their opposition, Declaration of Louis Lanier, Ph.D.

13. Defendant's paragraph 13 is a statement of intent or motive, and plaintiffs are not in a position to disprove or contradict it. Plaintiffs agree that the FAA Administrator has the authority to set pay rates. Defendant's Exhibit 11, upon which, according to Defendant's paragraph 13, Mr. Early bases his statement

(Defendant's Exhibit 1, para. 7), is a document, "2004 Summary of Market Survey," the authenticity and relevance of which plaintiffs cannot test without discovery and at this stage of the litigation.

14. Plaintiffs do not dispute that the FAA Administrator increased the pay under the pay bands in January 2001 and December 2001.  Defendant's Exhibit 12, pp. 2, 5.

15. Plaintiffs do not dispute that the FAA Administrator did not increase pay under the pay bands in 2003, 2004 and 2005.  Plaintiffs received no increases in their base pay in 2003, 2004 and 2005.  Exhibit A, O'Hara Declaration at para. 3.

16. Plaintiffs do not dispute that the FAA Administrator transmitted to employees the memoranda in Defendant's Exhibit 13, although some of those memoranda are undated and as to those, plaintiffs will require discovery.  Plaintiffs do dispute the assertion that employees were aware, at the time they received these memoranda, of the present and future effects of the FAA Administrator's decisions on older employees, especially employees at the tops of their pay bands who no longer received pay increases that counted in base pay and for purposes of their retirement and other benefits.  Exhibit A, O'Hara Declaration at para. 8.

17. Plaintiffs are not in a position to dispute whether the "broadcast message" referred to in Defendant's paragraph 17 notified employees in January 2003 "of the manner in which pay bands would be adjusted and of the

consequences of reaching the pay band maximum for a position." Defendant's paragraph 17. Defendant refers, for support of this assertion, to paragraph 7 of Mr. Early's declaration, Defendant's Exhibit 1. However, paragraph 7 of the declaration does not cite to the broadcast message. Assuming the broadcast message Paragraph 17 refers to is page 6 of Defendant's Exhibit 12, there is no date on that message.

18. Plaintiffs do not dispute that the FAA Administrator "reiterated" pay policies in her undated broadcast message. Plaintiffs dispute that individual employees understood, as a result of reading the broadcast message, that policies would disparately affect older workers. O'Hara Declaration at para. 8.

19. Plaintiffs do not dispute that the FAA briefed employees about some of the elements of the Core Compensation Pay System. Plaintiffs dispute that individual employees understood, as a result of the briefings, that the System or elements of it would disparately affect older workers. Exhibit A, O'Hara Declaration at para. 8.

20. Plaintiffs do not dispute that the FAA gave pamphlets about the Core Compensation Pay System to employees and set up a website about the System for employees to use. Plaintiffs dispute that individual employees understood, as a result of reading the pamphlets and using the website, that the Core Compensation

Pay System would disparately affect older workers.  Exhibit A, O'Hara

Declaration at para. 8.

21. Plaintiffs dispute that Defendant's Exhibits 14 and 16, plaintiff

Coghlan's Standard Form 50s dated January 11, 1004 (SF 50s) and O'Hara's SF

50s issued on a number of dates state or explain that their compensation is at the

maximum for their pay band and that their OCI and SCI were not included in their

base compensation.   The seven pages of Exhibit 14 comprise corrections to each

other, and are difficult to understand.  Notwithstanding, plaintiffs do not dispute

that Coghlan did not receive an increase in his base pay in January 2004.  Plaintiffs

likewise do not dispute that O'Hara did not receive an increase in his base pay in

2003, 2004 and 2005.

22. Plaintiffs do not dispute that Coghlan and O'Hara were in pay band J at

all times relevant to this suit.

23. Plaintiffs do not dispute that on January 11, 2004, Coghlan received a

portion of his OCI and SCI as an increase to his base pay, which until then had

been below the maximum for pay band J, and that he received the remainder of his

pay increase as a lump sum.

24. Plaintiffs do not dispute that the SF-50s issued to Coghlan on January

11, 2004 informed him that his base pay had been increased to $102,300.  Plaintiffs

dispute that the SF-50s "revealed" that his base pay could not go any higher.  The

SF-50s, Defendant's Exhibit 14, state only that pay is "based on" pay band J, not that his base pay could not go any higher.

25. Plaintiffs do not dispute that Coghlan had, on or shortly after January 11, 2004, received the information contained in the SF-50s.  Plaintiffs dispute that Coghlan had "actual notice," in the words of Defendant's paragraph 25, "regarding the consequences of the core compensation policies on his pay and benefits."  Nor did Coghlan have notice of the fact that the FAA was treating other employees differently.

26. Plaintiffs dispute that pages 4 – 6 of Defendant's Exhibit 14 put Coghlan and other employees on notice that the Core Compensation Pay System as applied to him and other older employees was discriminatory on the basis of age.  Exhibit A, O'Hara Declaration at para. 8.

27. Plaintiffs do not dispute that Coghlan contacted an EEO counselor on August 10, 2004.

28. Plaintiffs do not dispute the statements in Defendant's paragraph 28.

29. Without discovery, plaintiffs cannot dispute Defendant's paragraph 29. Upon information and belief, employees in plaintiffs' class are older than the average FAA employee.  Exhibit A, O'Hara Declaration, at para. 4, 6.

30. Without discovery, plaintiffs cannot dispute Defendant's paragraph 30. Upon information and belief, the average age of employees under the GS system

and employees under Core Compensation System whose annual increases are included in their base pay is significantly lower than plaintiffs' age. Exhibit A, O'Hara Declaration, paras. 4, 6.

31. Without discovery, plaintiffs cannot dispute Defendant's paragraph 31. Upon information and belief, had plaintiffs O'Hara and Coghlan remained under the GS system, they would have received increases in their base pay in 2003, 2004 and 2005, which increases would have resulted in an increase to their retirement and life insurance benefits.

32. As of September 27, 2004, when plaintiff Coghlan filed his formal complaint of age discrimination with the Department of Transportation, the FAA had "exempted" or "grandfathered" more than 4,000 employees who, even though their positions had been "converted" to Core Compensation, continued to receive OSIs and SCIs as permanent adjustments to their base pay. Defendant Exhibit 4, p. 3.

33. In addition, Many FAA employees remain General Schedule employees and are paid according to the GS pay system. Defendant's Exhibit 17, para. 6; Defendant's Exhibit 11, p. 4 of 4.

34. The maximum pay for several GS-graded positions exceeds the maximum compensation paid under most pay bands in the Core Compensation Pay System. Exhibit A, O'Hara Declaration para. 2.

35. The FAA Administrator has authority to "grandfather" former GS employees or to otherwise phase in the implementation of Core Compensation so that older employees are not adversely affected, or are less adversely affected.  The FAA Administrator has authority to determine which classes of employees are subject to HRPM Comp-2.4C, and in particular, its provision that if an employee's base compensation is above the pay band maximum, OSIs and SCIs are paid as a lump sum, not includable in base pay.  Defendant's Exhibits 7 and 9.

36. FAA employees and other federal government employees under the GS system receive General Increases (cost of living increases determined each year by the President and Congress), and may in management's discretion receive Within Grade Increases (based on an acceptable level of competence) and/or Quality Step Increases.  Defendant's Exhibit 9, page 2.  All three increases are included in base pay.

37. The FAA Administrator has the authority and discretion to pay OSIs and SCIs to only a portion of the workforce that is covered by the Core Compensation Pay System, and to determine which employees will receive those increases, as well as whether those increases will be included in base pay.  Defendant's Exhibit 9, pp. 2-3; Defendant' Exhibits 11, 12.

38. Of the FAA employees in Core Compensation who were not "grandfathered" or "exempted," who are at the top of their pay bands and who

40

receive pay increases that are not included in their base pay for retirement and other purposes, more than 95% are over the age of 40.  Exhibit A, O'Hara Declaration, last page; Defendant's Exhibit 1, para. 9.

39. Of the group of FAA Core Compensation employees "grandfathered" or otherwise "exempted" from the requirement that annual increases not be included in base pay, approximately 2700 are covered by collective bargaining agreements that provide for including annual pay increases in base pay, notwithstanding that the Core Compensation Pay System applies to the bargaining unit.  Defendant's Exhibit 1, para. 9.  Of the remaining non-collectively bargained or unrepresented Core Compensation employees in this "grandfathered" or "exempted" group who receive OSIs and SCIs as increases to base pay (Defendant's Exhibit 7, Sec. 1), a significant number are, upon information and belief, younger than plaintiffs and the class they seek to represent. Exhibit A, O'Hara Declaration, paras. 4, 6.

40. Of the FAA employees who remain on under the GS pay system (called the "FG" system at FAA, see Defendant's Exhibit 9, 2nd page), a significant number are, upon information and belief, younger than plaintiffs and the class they seek to represent.  Exhibit A, O'Hara Declaration, paras. 4, 6.

41. Whether to "grandfather" (i.e. include annual increases in base pay) a group of employees whose positions have been converted to the Core Compensation Pay System, whose compensation is at the top of their pay bands,

and who receive annual increases that are not included in their base pay, is a decision within the authority and discretion of the FAA Administrator. Defendant's Exhibits 1, Exhibit 9 p. 3, Exhibit 12, Exhibit 13 p. 5 (noting FAA's decision to "grandfather" pay of employees whose pay exceeds their pay band maximum because paying future increases in lump sums instead of base pay increases "would have impacted retirement income.").

42. In January 2006, the FAA Administrator authorized a 3.1% OSI increase and raised the salaries at the top of the pay bands by 2.1%. These increases will increase the base pay of "grandfathered" employees. General schedule or "FG" employees received a 2.1% general increase, which will increase their base pay. Employees not "grandfathered" or otherwise exempted will receive the OSI increase in a lump sum payment that does not increase their base pay. Defendant's Exhibit 15.

Respectfully submitted,

_____
Barbara Kraft     D. C. Bar No. 358563
Kraft Eisenmann Alden, PLLC
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC   20004
(202) 783-1391
Fax (202) 783-1392