UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
KATHLEEN A. BREEN et al.,     )
                              )
     Plaintiffs,              )
                              )
          v.                  )     Civil Action No. 05-654 (RWR)
                              )
MARY E. PETERS¹ et al.,       )
                              )
     Defendants.              )
_____)
```

### MEMORANDUM OPINION AND ORDER

Plaintiffs are a proposed class comprised of flight service air traffic control specialists who are age 40 or older and are current or former employees of the Federal Aviation Administration ("FAA") of the Department of Transportation ("DOT"). Plaintiffs allege that the FAA and DOT discriminated against them by targeting their jobs for outsourcing and terminating plaintiffs' federal employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. Defendants have moved under Fed. R. Civ. P. 12(b)(1) to dismiss plaintiffs' claim for lack of jurisdiction. Because this court has jurisdiction over plaintiffs' ADEA claims, defendants' motion to dismiss will be denied. Defendants have moved in the alternative for summary judgment, arguing that plaintiffs have

---

[1] The current Secretary of Transportation, Mary E. Peters, is substituted for former Secretary Norman Y. Mineta. See Fed. R. Civ. P. 25(d)(1).

-2-

failed to establish a prima facie case of age discrimination. Because defendants have not demonstrated the absence of a genuine issue of material fact, defendants' motion for summary judgment will be denied.

BACKGROUND

In response to the Federal Activity Inventory Reform Act of 1998, the Office of Management and Budget Circular No. A-76, and President Bush's 2001 Competitive Sourcing Initiative, the FAA determined that the air traffic control activities plaintiffs had historically performed for the FAA were commercial in nature and could be provided by a private entity at a cost savings without degrading the service.  This decision was based on multiple studies conducted by FAA personnel and external consultants.  The FAA received competitive contract proposals for the activity, including one from the plaintiffs themselves.  The proposals were reviewed by fifty evaluators with technical expertise and ten evaluators with cost expertise.  Based on reports by these evaluators, the FAA announced its decision in February 2005 to award the contract for the outsourced activities to Lockheed Martin.

Entities or individuals representing the plaintiffs' interests have challenged the merits of the FAA's decisions at different steps of the process, including the decision to classify the activity as commercial and the decision to award the

-3-

contract to Lockheed Martin. These challenges triggered reviews that affirmed the FAA's decisions. The challenge to the decision select Lockheed Martin's bid was reviewed by a special master, Judge Edwin B. Neill of the General Services Board of Contract Appeals, assigned by the FAA's Office of Dispute Resolution for Acquisition ("ODRA") for this review. Judge Neill's findings and recommendations were adopted by the FAA administrator, and the contract finally was awarded to Lockheed Martin in an FAA order issued July 20, 2005 ("July 2005 Order"). Plaintiffs filed this ADEA complaint shortly after the FAA announced its February 2005 decision to award the contract to Lockheed Martin.

## DISCUSSION

The provision of the ADEA that applies to federal employers requires that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . [in certain specified entities] shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). It further provides that "[a]ny person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. § 633a(c).

Plaintiffs plead both disparate treatment and disparate impact as alternative methods to prove their age discrimination claim. The difference between a disparate treatment case and a

-4-

disparate impact case is the employer's intent. In a disparate treatment case, the plaintiff seeks to prove through either direct or circumstantial evidence that the employer had a "discriminatory intent or motive" behind its action. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986 (1988). In a disparate impact case, there is no need to show that the employer acted with a discriminatory intent. Id. "Rather, the necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." Id. at 987.

Defendants argue that under either theory, plaintiffs' ADEA claim must be dismissed for lack of jurisdiction. In the alternative, defendants argue that they are entitled to summary judgment because plaintiffs have not established a prima facie case of age discrimination.

I.  MOTION TO DISMISS FOR LACK OF JURISDICTION

   A.  Collateral attack on agency decision

Defendants contend that plaintiffs' suit is not a genuine ADEA action, but really a collateral attack on the FAA's July 2005 Order, the review of which is vested solely in the court of appeals under 49 U.S.C. § 46110(a). From that premise, defendants argue that there is no district court jurisdiction

-5-

over plaintiffs' age discrimination claim. (Def.'s Mem. in Supp. of Mot. to Dismiss and for Summ. J. ("Def.'s Mem.") at 61-63.)

Certain FAA administrative orders are reviewable only by the court of appeals. 49 U.S.C. § 46110(a); City of Rochester v. Bond, 603 F.2d 927, 934-35 (D.C. Cir. 1979). In addition, claims that are "'inescapably intertwined' with review of such orders" do not fall within a district court's jurisdiction. Merritt v. Shuttle, Inc., 245 F.3d 182, 187 (2d Cir. 2001). "A claim is inescapably intertwined in this manner if it alleges that the plaintiff was injured by such an order and that the court of appeals has authority to hear the claim on direct review of the agency order." Id. at 187. However, other related "[a]ctions which are not (or not yet) orders but which are nonetheless reviewable may be raised in the district court . . . ." City of Rochester, 603 F.2d at 935. Thus, what may and may not be heard by a district court in light of the exclusivity provision of § 46110 depends upon whether the claim in the district court "'could have . . . been' presented to and decided by a court of appeals" in its § 46110 review of an agency order. Merritt, 245 F.3d at 188 (quoting City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 339 (1958)). In other words, "the test for determining whether an exclusive jurisdiction provision precludes a district court from hearing a given claim is 'whether the administrative agency had the authority to decide th[e] issue' raised by the

-6-

claim." Id. at 188 n.9 (quoting Cook v. Pan Am. World Airways, Inc., 771 F.2d 635, 641 (2d Cir. 1985)).

Decisions in this circuit and others illuminate this distinction. For example, a district court had subject matter jurisdiction over a negligence action under the Federal Tort Claims Act (FTCA) against FAA employees for denying a pilot medical certificates, even though the denial of the medical certificates could be reviewed only in accord with § 46110. Beins v. United States, 695 F.2d 591, 597 (D.C. Cir. 1982); see also Merritt, 245 F.3d at 189-91 (holding that a pilot's negligence claim could be heard by the district court because the negligence claim was not inescapably intertwined with the FAA's order suspending the pilot's certificate, which could be reviewed only under § 46110). In Beins, the court noted the critical point that an appeal to the court of appeals from the FAA's license suspension order could not have led either to a review of the negligence claims lodged in the district court or to an award of damages for negligence. Beins, 695 F.2d at 598 n.11 (distinguishing Beins from City of Rochester where "an appeal of the . . . FAA's order[] to the court of appeals would have provided an adequate means of reviewing appellants' allegations in the district court suit").

Defendants cite Carey v. O'Donnell, 506 F.2d 107 (D.C. Cir. 1974) to support their position that § 46110 precludes district

-7-

court jurisdiction of plaintiffs' ADEA claims in this instance.[2]
In that opinion, the court concluded that plaintiffs, who had
sued for violations of the ADEA, the Railway Labor Act ("RLA"),
and the duty of fair representation in the negotiation of the
collective bargaining agreement, had

> all had their day in court as contemplated by the
> statute. Viewed objectively, the actions below,
> although couched in terms of violations of the RLA and
> the ADEA, are essentially collateral attacks on the
> integrated seniority list as incorporated in the . . .
> agreement . . . [negotiated by plaintiffs' bargaining
> unit representatives and the airlines involved in the
> merger], approved by the Civil Aeronautics Board
> [("CAB")], and reviewed by this court . . . . We
> perceive no necessity for additional review, not
> contemplated by the Federal Aviation Act, in the
> District Court or any other forum.

Carey, 506 F.2d at 110. The opinion did not elaborate on the
facts or analysis driving the conclusion the court reached, but
did frame the issue as "whether the District Court lacks
jurisdiction to entertain a collateral attack upon an order of
the Board approving an airline merger, subject to labor
protective provisions, and upon the Boards' refusal to exercise
its reserved jurisdiction to set aside an integrated seniority
list negotiated by the parties' freely chosen representatives."
Id. at 108. The Carey decision is readily distinguishable on its

---

[2] It is not apparent why defendants cite two other cases in conjunction with this proposition. (See Def.'s Mem. at 63 (citing J.A. Jones Mgmt. Servs. v. FAA, 225 F.3d 761, 762 (D.C. Cir. 2000), and Multimax, Inc. v. FAA, 231 F.3d 882 (D.C. Cir. 2000).) Those two cases do not mention, let alone support, the defendants' proposition. Nor do they mention the Carey decision.

-8-

facts from the case at hand insofar as the result complained of in Carey was the product of negotiations by plaintiffs' elected representatives.  In addition, the 33-year-old Carey decision appears to have been overtaken by evolving jurisprudence on the preclusive effect of § 46110 reviews, as it has not set the standard either in this circuit or others.  See Cook (departing from Carey and holding that the district court was not deprived of its statutory jurisdiction over an ADEA challenge to a seniority system just because it happened to be adopted as part of a merger approved by the CAB, an agency action that was reviewable only by the courts of appeals); Clayton v. Republic Airlines, 716 F.2d 729 (9th Cir. 1983) (departing from Carey and holding that plaintiff could be heard on his duty of fair representation claim in district court even though review of the merger in which the representation occurred was approved by the CAB and review of the CAB's action was committed exclusively to the courts of appeals); Beins (distinguishing a related negligence action from issues that were or could have been reviewed in a § 46110 appeal); Merritt (same).

Here, plaintiffs have alleged that they have been targeted for termination as federal employees in violation of the ADEA.  They complain of impending or executed personnel actions that they allege are discriminatory.  Neither the FAA nor the ODRA has authority to hear a complaint of age discrimination.  See 29

-9-

U.S.C. § 633a(c) (vesting original jurisdiction in federal district courts). Consequently, an appeal to the court of appeals of the ODRA decision on the bid competition could not have encompassed plaintiffs' age discrimination claims. As defendants themselves point out, the July 2005 Order is not itself a personnel action. (Def.'s Mem. at 76.) Thus, plaintiffs' ADEA claim is not inescapably intertwined with the July 2005 Order, and district court jurisdiction is not precluded.

   B.   Sovereign immunity from disparate impact cases

Defendants assert that they are immune from plaintiffs' age discrimination claim based on a theory of disparate impact. They argue that neither the text of § 633a(a), nor its legislative history, supports a conclusion that Congress waived sovereign immunity from disparate impact age discrimination claims. (See Def.'s Mem. at 77-89.)

An inquiry into whether § 633a(a) expressly waived the sovereign's immunity from suit must begin with the language of the statute itself. See United States v. Ron Pair Enterprises, 489 U.S. 235, 241 (1989). Where the statute's language is plain, a court is bound to "'enforce it according to its terms.'" Id. (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)). The prohibition for federal employers is simple and sweeping: "All personnel actions affecting employees or applicants for

-10-

employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). The statutory text does not limit or qualify the type of age discrimination that Congress prohibited for federal employers, or limit the theory or proof upon which a plaintiff may base a claim that a federal employer violated § 633a(a). To the contrary, the prohibition extends expressly to "**any** discrimination based on age." Id. (emphasis added).

Defendants necessarily, if tacitly, concede that the language of § 633a(a) expressly waives sovereign immunity from disparate treatment age discrimination claims. Yet, defendants do not explain how the language of § 633a(a), which does not mention disparate treatment, disparate impact, motive or intent, expressly waives immunity as to disparate treatment claims while reserving it for disparate impact claims. The text of § 633a(a) does not explicitly or implicitly require a plaintiff to prove that the federal employer was motivated by animus or intended to discriminate in violation of the law.

In short, the plain language of § 633a(a) does not support the distinction between disparate treatment and disparate impact that defendants urge. By prohibiting "any discrimination based on age," the statute encompasses both disparate treatment and disparate impact cases, as both methods of proof seek redress for illegal discrimination. Despite the differing methods, "[t]he

-11-

distinguishing features of the factual issues that typically dominate in disparate impact cases do not imply that the ultimate legal issue is different than in cases where disparate treatment analysis is used." Watson v. Fort Worth Bank & Trust, 487 U.S. at 987. "The term 'discrimination' does not refer to one method of analysis over another, instead, it is the destination for two different pathways of proof." Lagerstrom v. Mineta, 408 F. Supp. 2d 1207, 1212 (D. Kan. 2006). The cogent and compelling analysis in Lagerstrom dispels any serious doubt[3] that "[t]he text of Section 633a broadly prohibits any discrimination based on age, and . . . [that] Congress explicitly waived sovereign immunity for both intentional discrimination and disparate impact claims." Id. at 1213. Accordingly, defendants' Rule 12(b)(1) motion to dismiss plaintiffs' age discrimination claim based on a theory of disparate impact will be denied.

---

[3] Defendants' argument that § 633a(a) does not express a waiver of sovereign immunity from a disparate impact claim was first presented in their opposition to the plaintiffs' motion for a preliminary injunction. The memorandum opinion denying the preliminary injunction noted "good reason to doubt" that § 633a(a) encompasses disparate impact cases, but anchored the denial on other factors. Breen v. Mineta, Civil Action No. 05-654 (RWR), 2005 WL 3276163, *7(D.D.C. Sept. 30, 2005). Closer scrutiny, however, reveals that defendants' argument on § 633a(a)'s waiver of sovereign immunity addresses the wrong question. The proper question is whether § 633a(a) embraces a disparate impact age discrimination claim. It is not, as defendants framed the question, whether the Supreme Court's statutory interpretation of 29 U.S.C. § 623 in Smith v. City of Jackson, 544 U.S. 228 (2005), works equally well as a statutory interpretation of the very differently worded statutory text of § 633a(a). (See Def.'s Mem. at 79-84.)

II. MOTION FOR SUMMARY JUDGMENT

Defendants have moved in the alternative for summary judgment. They argue that plaintiffs have not established a prima facie case of age discrimination and that there are no material facts in genuine dispute.

Summary judgment may be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb, 433 F.3d at 895 (quoting Liberty Lobby, 477 U.S. at 248). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. Here, however, there are no "depositions, answers to interrogatories, and admissions on file" -- all of which are anticipated by Rule 56(c) -- because discovery has not begun.

-13-

Often, "summary judgment motions [are] premature until all discovery has been completed." City of Rome v. United States, 450 F. Supp. 378, 384 (D.D.C. 1978).  Summary judgment is premised on the notion that parties will have had "adequate time for discovery" to establish whether a genuine issue of material facts exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  See also Liberty Lobby, 477 U.S. at 257 (stating that plaintiff must have "a full opportunity to conduct discovery"); Paquin v. Fed. Nat'l Mortg. Ass'n, 119 F.3d 23, 28 (D.C. Cir. 1997) (reversing district court's grant of summary judgment as premature because it declined to permit additional discovery sought by an ADEA plaintiff to develop facts relevant to defendant's summary judgment motion).

Whether proving age discrimination through a disparate treatment theory or through a disparate impact theory, a plaintiff suing under the ADEA is not required to establish a prima facie case at the pleading stage.  Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510-11 (2002).  Neither is an ADEA plaintiff required to defend against a summary judgment motion challenging a prima facie case without first having had the benefit of discovery.  "Before discovery has unearthed relevant facts and evidence it may be difficult to define the precise formulation of the required prima facie case in a particular case.  Given that the prima facie case operates as a flexible evidentiary standard,

it should not be transposed into a rigid pleading standard for discrimination cases." Id. at 512. Indeed, discovery could possibly reveal direct evidence of intent, foreclosing the need to prove all elements of a circumstantial prima facie case. Id. at 511. Furthermore, a disparate treatment claim based on circumstantial evidence presents its own special problems for summary judgment.

> Since the information relating to state of mind generally is within the exclusive knowledge of one of the litigants and can be evaluated only on the basis of circumstantial evidence, the other parties normally should have an opportunity to engage in discovery before a summary judgment is rendered.[4]

Charles A. Wright et al., 10B Fed. Practice & Procedure, Civil § 2730 at 6-7 (3d ed. 1998). A disparate impact claim, which does not require a showing of intent, probably cannot be advanced

---

[4] The quote continues: "But even this may not be enough. Inasmuch as a determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable people might differ -- a function traditionally left to the jury -- summary judgment often will be an inappropriate means of resolving an issue of this character." Id. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ." Liberty Lobby, 477 U.S. at 255. Even after full discovery has been allowed, "[s]ummary judgment in favor of the party with the burden of persuasion, however, is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." Hunt v. Cromartie, 526 U.S. 541, 553 (1999). "The task of assessing a [decision maker's] motivation, however, is not a simple matter; on the contrary, it is an inherently complex endeavor, one requiring the trial court to perform a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." Id. at 546 (quotation marks and citation omitted).

-15-

without data that only the defendant can be expected to have. Without access to that data through the discovery process in litigation, a plaintiff could not reasonably be expected to meet the evidentiary requirements of a prima facie disparate impact case.

Here, because plaintiffs have not had an opportunity to adequately develop the facts, no fair determination can be made as to whether a genuine issue of material fact exists. Accordingly, defendants' motion for summary judgment will be denied without prejudice to its renewal after discovery has been completed.

CONCLUSION AND ORDER

Defendants have not shown that plaintiffs' age discrimination claim is inescapably intertwined with the matters committed to the exclusive review of the court of appeals under 49 U.S.C. § 46110, and § 633a(a) of the ADEA expressly waives the defendants' sovereign immunity as to age discrimination claims without expressing a limit as to the theory of discrimination. Thus, jurisdiction over plaintiffs' claims exists. Defendants have not shown that there are no genuine issues of material fact, making summary judgment inappropriate. Accordingly, it is hereby

ORDERED that defendants' motion [23] to dismiss the complaint for lack of jurisdiction be, and hereby is, DENIED. It is further

-16-

ORDERED that defendants' alternative motion [23] for summary judgment be, and hereby is, DENIED without prejudice.  It is further

ORDERED that plaintiffs' motion [45] for a status conference be, and hereby is, GRANTED.  A separate order setting the initial scheduling conference accompanies this Memorandum Opinion and Order.

SIGNED this 8th day of  January, 2007.


                                    /s/
                          RICHARD W. ROBERTS
                          United States District Judge