UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MALACHY COGHLAN,
TIMOTHY O'HARA, et al.,

    Plaintiffs,

v.                                                  C. A. No. 05-1476 (PLF)

MARY E. PETERS, Secretary,

    Defendant.
_____/

**PLAINTIFFS' RESPONSE TO THE COURT'S MAY 30, 2007 ORDER
REGARDING WHETHER *LEDBETTER v. THE GOODYEAR TIRE & RUBBER
CO.* RENDERS PLAINTIFFS' CLAIMS UNTIMELY**

On March 29, 2007, the Court entered an order denying Defendant's motion to dismiss or, in the alternative, for summary judgment, with respect to Plaintiffs' claims of disparate impact, disparate treatment and continuing violation age discrimination. See, Amended Complaint, paras. 28-32. On May 29, 2007, the Supreme Court issued its decision in *Ledbetter v. The Goodyear Tire & Rubber Co.*, ___U.S.___, 127 S.Ct. 2162 (2007). On May 30, 2007, this Court entered an order vacating its March 29 order and directing the parties to brief the issue of whether, in light of *Ledbetter*, Plaintiffs' claims are untimely.

As we show below, Plaintiffs' claims, with the exception of Plaintiff Coghlan's individual 2004 claim, are timely even after *Ledbetter*.

*Ledbetter*

In *Ledbetter*, the Supreme Court considered the disparate treatment claim of an employee who alleged her employer discriminated on the basis of sex when, during the 180-day period before she contacted the EEOC to file a charge in March 1998, it paid her less than similarly situated men, and when, in July 1998, she was denied a raise. At trial

of her Title VII pay discrimination claim, Ledbetter introduced evidence that during the course of her employment, her employer had paid her less because she was a woman, and that the employer's pay decisions continued to affect her pay throughout her employment. As a result, when she retired in November 1998, "she was being paid significantly less than any of her male colleagues." *Ledbetter, slip op.* at 2.

The jury found for Ledbetter and awarded back pay and damages. Goodyear appealed, arguing "that Ledbetter's pay discrimination claim was time-barred with respect to all pay decisions made prior to September 26, 1997 – that is, 180 days before the filing of her EEOC questionnaire" in March 1998. Goodyear also argued that it had not discriminated during the period between the filing of the EEOC questionnaire in March 1998 and July 1998 when she filed her formal EEOC charge, or during the period between July 1998 and her retirement in November 1998. *Id., slip op.* at 2-3.

The Eleventh Circuit reversed the jury verdict, holding "that a Title VII pay discrimination claim cannot be based on any pay decision that occurred prior to the last pay decision that affected [Ledbetter's] pay during the EEOC charging period." *Id., slip op.* at 3. The Eleventh Circuit also concluded that there had been insufficient evidence of the employer's discriminatory intent when it made two pay decisions within the 180 day period – a decision to deny Ledbetter a raise in 1997, and another decision to deny her a raise in 1998. *Id., slip op.* at 3.

Ledbetter filed a petition for *certiorari*, but she did not seek review of the Eleventh Circuit's holding that there was insufficient evidence of discriminatory intent with respect to the 1997 and 1998 decisions (those within the charge-filing period) to deny her raises. Instead, she asked the Supreme Court to consider whether a plaintiff can sue for pay discrimination "when the disparate pay is received during the statutory

2

limitations period, but is the result of intentionally discriminatory pay decisions that occurred outside the limitations period." *Id.* Ledbetter argued to the Supreme Court that each paycheck issued to her during the charge-filing period was discriminatory, because it perpetuated the effects of past pay discrimination, and that the July 1998 denial of a raise was discriminatory for the same reason. *Id., slip op.* at 4. She asserted that these deprivations were disparate treatment discrimination, "the central element of which is discriminatory intent." *Id., slip op.* at 5.

The Supreme Court rejected Ledbetter's argument that the paychecks and the denial of the raise, events within the charge-filing period, comprised intentional discrimination within the charge-filing period simply because these events perpetuated effects within that period of past sex discrimination. Rather, the Court said, "Ledbetter should have filed an EEOC charge within 180 days after each allegedly discriminatory pay decision was made and communicated to her." *Id., slip op.* at 9. "Ledbetter's attempt to take the intent associated with the prior pay decisions and shift it to the 1998 pay decision is unsound….[Her argument] would effectively eliminate the defining element [i.e., discriminatory intent] of her disparate treatment claim…" *Id., slip op.* at 9-10.

The Court distinguished *Bazemore v. Friday*, 478 U.S. 385 (1986). Ledbetter had argued that under *Bazemore*, each paycheck that reflects past discrimination, even if not itself motivated by discriminatory intent, triggered a new charge filing period. The Supreme Court rejected this interpretation of *Bazemore*:

> An employer that adopts and **intentionally** retains [a discriminatory] pay structure can surely be regarded as **intending** to discriminate on the basis of race as long as the structure is used….*Bazemore* stands for the proposition that an employer violates Title VII and triggers a new EEOC charging period whenever the employer issues paychecks using a discriminatory pay structure. But a new Title VII violation does not occur and a new charging period is not triggered when

3

>an employer issues paychecks pursuant to a system that is "facially nondiscriminatory and neutrally applied." *Lorance* [*v. AT&T Technologies*, 490 U.S. 900, 911 (1989).] ….**Because Ledbetter has not adduced evidence that Goodyear initially adopted its performance-based pay system in order to discriminate on the basis of sex or that it later applied this system to her within the charging period with any discriminatory animus, *Bazemore* is of no help to her.** Rather, all Ledbetter has alleged is that Goodyear's agents discriminated against her individually in the past and that this discrimination reduced the amount of later paychecks.

*Id., slip op* at 15, 17-18 (emphasis added).

Thus, the Supreme Court rejected Ledbetter's argument that claims based on pay decisions during the charge-filing period can be the basis for timely Title VII charges even if there is no evidence of discriminatory intent in those decisions, as long as the decisions can be shown to perpetuate the effects of past intentional acts of discrimination.[1]

*Ledbetter* Does Not Render Plaintiffs' Claims Untimely

Plaintiffs' claims of disparate treatment, disparate impact and continuing violation age discrimination are based on a pay practice incident to the FAA's Core Compensation System – discretionary raises that are not included in base pay, and thus are not reflected in retirement benefits – that Plaintiff Coghlan identified when he filed an informal EEO complaint with the FAA on August 10, 2004 and a formal complaint on September 28, 2004 (Amended Complaint para. 4), and that Plaintiffs Coghlan and O'Hara identified when they filed informal EEO complaints with the FAA on March 23, 2005 (Amended Complaint, para.) 11. Both complaints cited the same pay practice – discretionary raises

---

[1] The Supreme Court also rejected Ledbetter's argument that because the Equal Pay Act allowed claims challenging pay disparities arising outside the limitations period, Title VII should also be interpreted to allow such claims. The Court pointed out that the EPA "does not require the filing of a charge with the EEOC or proof of intentional discrimination….If Ledbetter had pursued her EPA claim, she would not face the Title VII obstacles she now confronts." *Id., slip op.* at 21.

in January 2004 (in the case of Coghlan's individual complaint) and January 2005 (in the case of their March 2005 complaints).

Coghlan's formal complaint of September 28, 2004 alleged disparate treatment and continuing violation age discrimination, and alleged that the pay practice disparately affected approximately 800 older employees.[2] The Civil Rights Office of the Department of Transportation (DOT) rejected his complaint on December 13, 2004 because it was "a generalized grievance" under 29 CFR Sec. 1614.107(a)(1) and because it was untimely, noting, *inter alia*, that "[Coghlan's] initial contact with an EEO counselor occurred on August 10, 2004….well beyond 45 days after receiving [the discretionary pay raise]."[3] The DOT did not address the issue of continuing violation. On Coghlan's appeal, the EEOC held that Coghlan's August 2004 complaint was untimely because he knew or should have suspected discrimination when he received the discretionary payment in January 2004. The EEOC found that the continuing violation theory was "inapplicable here because the [January 2004] denial of a salary increase is a discrete act." Exhibit 1. Coghlan unsuccessfully sought reconsideration by the EEOC, which again rejected his continuing violation claim and his claim that each paycheck was a discrete act of discrimination, and affirmed that his complaint was untimely. See Exhibit 2. Coghlan received a right to sue letter from the EEOC, and commenced this action on July 26, 2005.

Meanwhile, the Department of Transportation transferred Coghlan's and O'Hara's March 2005 class complaint to the EEOC on April 5, 2005 (Amended

---

[2] See Coghlan's formal complaint, Exhibit 4 to Defendant's motion to dismiss or, in the alternative, for summary judgment.
[3] See Dec. 13, 2004 Letter from U. S. Dept. of Transportation Departmental Office of Civil Rights to Coghlan, Exhibit 5 to Defendant's motion to dismiss or, in the alternative, for summary judgment, page 3.

5

Complaint, para. 12), and, in August 2005, moved to dismiss the class complaint because it presented the same issue as in Coghlan's pending lawsuit. Coghlan and O'Hara agreed to the dismissal and thereafter sought to amend their court complaint in this case to include the 2005 class complaint allegations that had been the subject of their EEOC case. Amended Complaint, paras. 13, 14. On December 16, 2005, this Court granted their motion for leave to file an amended complaint to include these allegations.

Plaintiffs agree that *Ledbetter* appears to require the dismissal of Coghlan's individual claim that his January 2004 pay raise was discriminatory. However, Coghlan's and O'Hara's claims initiated in 2005, brought on behalf of themselves and similarly situated employees and described in paragraph 11 of the Amended Complaint, are not foreclosed by *Ledbetter*. Those claims were brought within 45 days of Plaintiffs' learning of the January 2005 raises, they do not depend on pre-limitations period events, and they are timely. *Ledbetter* says as much: "Ledbetter should have filed an EEOC charge within 180 days after each allegedly discriminatory pay decision was made and communicated to her." *Slip op.* at 9.

Not only do these claims remain timely under *Ledbetter*'s analysis. It is noteworthy that *Ledbetter* is a disparate treatment case, requiring proof of intentional discrimination as to each discrete act of discrimination within the charge-filing period. Plaintiffs here have alleged that the FAA's practice of paying discretionary pay raises not included in base pay amounts to intentional discrimination. Amended Complaint, para. 30. In addition, Plaintiffs allege **disparate impact**, a type of claim not addressed in *Ledbetter*. *Id.*, para 29.[4] Disparate impact may be shown if a facially neutral practice,

---

[4] See 42 U.S.C. Section 2000e-2(a)(2)(making it unlawful to limit, segregate or classify employees in a way that tends to deprive them of employment opportunities or adversely affect their employment because of their membership in a protected class), and Section 2000e-2(k),

6

like the periodic discretionary pay raises here, "fall[s] more harshly on" older workers. *Anderson v. Zubieta*, 180 F.3d 329, 338 (D.C. Cir. 1999), citing *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 336 n.15 (1977). See also, *Smith v. City of Jackson* (note 5 *infra*), 544 U.S. at 235-236 (ADEA not only prohibits actions that limit, segregate or classify based on age, but also acts that adversely affect one's status as an employee). As in *Zubieta*, 180 F.3d at 342, "[t]he gravamen of plaintiffs' disparate impact claim is that [the pay practice] *is* the factor that causes the disparate impact, whether it was intended to have that effect or not."

Here, Plaintiffs allege that the FAA's pay practice, indisputably facially neutral, has a disparate impact on older employees. Their disparate impact claim is timely because, as the EEOC Office of Federal Operations recognized, the payment of the discretionary raise was the discrete "discriminatory act" that triggered the charge-filing period. Exhibit 2. Thus, Plaintiffs' claims should be allowed to proceed.

Similarly, Plaintiff's continuing violation claim should be permitted to go forward. The Court of Appeals has acknowledged that *National RR Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), restricted the continuing violation theory by holding that a hostile environment claim must be based on acts that are part of the same employment practice, and that at least one act must fall within the charge-filing period. *Shea v. Rice,* 409 F.3d 448, 453 (D.C. Cir. 2005), cited in *Ledbetter, slip op.* at 4. *Morgan*, the Court of Appeals held in *Shea*, preserved *Bazemore*, and thus preserved a cause of action for

---

"Burden of proof in disparate impact cases." See also, *Smith v. City of Jackson*, 544 U.S. 228 (2005), in which the Supreme Court held that a disparate impact claim may be brought under the Age Discrimination in Employment Act, 29 U.S.C. Sections 621, *et seq.*, provided plaintiffs can identify one or more "specific employment practices that are allegedly responsible for any observed statistical disparities" and the employer cannot show these practices are based on reasonable factors other than age *Id.*, 544 U.S. at 242 [citations omitted]. Citing EEOC regulations, Justice Scalia's concurring opinion notes that a practice "age-neutral on [its] face but which nevertheless [has] a disparate impact on members of the protected age group must be justified as a business necessity." *Id.* at 244.

7

intentional pay discrimination where a paycheck within the charge filing period resulted from a pre-charge filing period discriminatory policy. *Ledbetter* seemed to affirm this reading of *Bazemore* (to the extent the pre-charge filing period policy can be shown to be intentional discrimination) as well as *Shea*'s reading of *Morgan*. See, *slip op.* at 17 (noting neither *Bazemore* nor *Morgan* stood for the proposition that conduct not motivated by discriminatory intent **and** not a discrete act can be said to be within the charge-filing period "just because it is related to some past act of discrimination."). Significantly, *Ledbetter* discussed *Morgan*'s distinction between a discrete act of discrimination and a hostile work environment. A discrete act, the Supreme Court said, constitutes a separate actionable employment practice. In contrast, a hostile work environment "typically comprises a succession of harassing acts, each of which 'may not be actionable on its own.'" *Slip op.* at 19 [citations omitted].

*Ledbetter*'s discussion of *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977) is relevant to the continuing violation theory. *Slip op.* at 5-6. In both cases, the Supreme Court rejected the notion that a practice or act that a plaintiff should have known was discriminatory, could be called upon later to claim that an effect of that practice or act was the basis for a new and separate charge of discrimination. Thus, in *Evans*, a policy barring employment of married women resulted in Evans' termination. Years later, upon her re-hire, the employer refused to give her credit for her past service, which had been interrupted as a result of her termination. The Court said that the employer was entitled to consider her termination as lawful when, after the requisite number of days, Evans had not filed a charge claiming her termination was discriminatory. Notably, neither *Ledbetter* nor *Evans* holds or suggests that the employer was entitled to treat its no-married-women policy as lawful. Rather, Evans, and presumably any other employee,

8

was obligated to file her charge as soon as the unlawful policy was applied *to her.* So Plaintiffs O'Hara and Coghlan have done in this case, with respect to discretionary pay increases.

While it may be too early to say, it appears that, after *Ledbetter*, the continuing violation theory may survive only to the extent plaintiffs can establish a hostile work environment as contemplated in *Morgan*, and that such a claim is actionable only if "at least some of the discriminatorily-motivated acts predicate to a hostile work environment claim…occur within the charging period." *Ledbetter, slip op.* at 19, note 7, citing *Morgan*, 537 U.S. at 117.[5] Whatever the eventual outcome in the District of Columbia and other circuits with respect to continuing violation, Plaintiffs here have timely alleged a pay practice within the charging period and, upon information and belief, this pay practice and its effects are ongoing. The Court should permit their continuing violation claim to proceed.

## CONCLUSION

With the possible exception of Plaintiff Coghlan's individual claim in August 2004, Plaintiffs' claims were and are timely. The Supreme Court's *Ledbetter* decision does not affect their claims before this Court.

Respectfully submitted,

_____/s/_____
Barbara Kraft   D. C. Bar No. 358563
Kraft Eisenmann Alden, PLLC
1001 Pennsylvania Ave., NW
Suite 600
Washington, DC  20004
(202) 783-1391

---

[5] This Court recently acknowledged the continuing violation theory in *Taylor v. D. C. Water & Sewer Authority*, 241 FRD 33, 35 n. 10 (D.D.C. 2007)(Court may consider employer policy developed prior to the limitations period as long as unlawful acts themselves fall within the limitations period, citing *Bazemore* and *Shea v. Rice*, 409 F.3d 448 (D.C. Cir. 2005).

9

bkraft@kea-law.com
Counsel for Plaintiffs