```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

MALACHY COGHLAN and              )
TIMOTHY O'HARA, et al.,          )
                                 )
            Plaintiffs           )
                                 )
      v.                         )  Civil Action No. 05-1476 PLF
                                 )
MARY E. PETERS, Secretary,       )
Department of Transportation,    )
                                 )
            Defendant.           )
                                 )
_____)
```

DEFENDANT'S RESPONSE TO THE COURT'S MAY 30, 2007 ORDER
REGARDING LEDBETTER v. GOODYEAR TIRE & RUBBER CO.

I. INTRODUCTION

The Secretary of Transportation provides this response to the Court's May 30, 2007 Order and to Plaintiff's filing addressing the significance to the instant action of the Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber, Co., 550 U.S. __, 127 S.Ct. 2162 (2007). As Plaintiffs concede on pages 1 and 6 of their brief, Ledbetter requires the dismissal of Plaintiff Coghlan's individual complaint regarding the January "2004 pay raise" or 2004 annual pay adjustment. See Plaintiffs' Response To The Court's May 30, 2007 Order Regarding Whether Ledbetter v. The Goodyear Tire & Rubber Co. Renders Plaintiffs' Claims Untimely ("Plaintiffs' Response") at 1 and 6.[1]  In

---

[1] Plaintiffs do not explicitly state that Ledbetter requires the dismissal of any class wide allegations related to the January 2004 annual pay adjustments. However, the dismissal of the individual claims should result in dismissal of any class wide claims related to the 2004 annual pay adjustments. As fully

addition, as described below and fully explained in arguments in support of Defendant's Renewed Motion To Dismiss Or, In The Alternative, For Summary Judgment, the class action complaint is untimely and must be dismissed as a matter of law.

## II.   PROCEDURAL HISTORY

On February 23, 2005, the Plaintiffs contacted an EEO

---

detailed in support of Defendant's Renewed Motion, Plaintiff Coghlan failed to exhaust his administrative remedies regarding the class wide allegations related to the 2004 annual pay adjustments. See Artis v. Greenspan, 158 F.3d 1301 (D.C. Cir. 1998) (failure to present class-wide claims during EEO Counseling was a failure to exhaust administrative remedies thereby depriving the court of jurisdiction).  Moreover, Plaintiff O'Hara does not contend that he filed any administrative complaint of age discrimination regarding the 2004 annual pay adjustments.  As a result, because Plaintiff Coghlan's individual complaint was untimely and Plaintiff O'Hara did not file any complaint on the matter, Plaintiffs may not rely upon the single filing rule in an attempt to maintain the class-wide allegations regarding the 2004 annual pay adjustments. See, e.g., Equal Employment Opportunity Commission v. Air Line Pilots Association, 885 F. Supp. 289, 293 (D.D.C. 1995) (the single filing rule assumes that at least one plaintiff in a lawsuit has filed a timely EEOC charge).  Moreover, even if another, yet unnamed class member did file a timely administrative complaint of age discrimination regarding the annual pay adjustments in 2004, (an event of which the Agency has no such records of having been filed), such an individual complaint would not have served the purposes of putting the Agency on notice of allegations regarding a class; therefore the class wide allegations were not administratively exhausted. See, e.g., Campbell v. National Railroad Passenger Corp., 163 F. Supp. 2d 19, 25 (D.D.C. 2001) (the single filing rule allows an individual plaintiff, who has not filed an EEOC charge, to satisfy the administrative exhaustion requirements under Title VII by relying on a charge filed by another plaintiff, but the rule does not apply where a claimant has filed her own charges on the same issue); Mayfield v. Meese, 669 F. Supp. 1123, 1127 (D.D.C. 1987) (individual charge would not serve the purpose of an administrative complaint, as it would not have been reasonable to uncover the alleged system of discrimination by the class).

Counselor. They contended that the alleged discriminatory event occurred on January 14, 2005 when the FAA Administrator "denied the aggrieved a raise/a within grade increase/step increase/annual COLA locality pay increase." See EEO Counselor's Report at 2. On March 23, 2005, the Plaintiffs filed a formal EEO Complaint. They again alleged age discrimination based on the FAA Administrator's refusal, on or about January 14, 2005, "to adjust [their] pay band." Meanwhile, on July 27, 2005, Plaintiff Coghlan filed the instant action, raising an age discrimination class action claim based on the agency's Core Compensation System. The current claim is addressed to the Core Compensation System which, according to the Amended Complaint, has resulted in "Coghlan and similarly situated FAA employees receiv[ing] less pay with each paycheck in 2004, and continuing thereafter, than they would have received had the FAA not implemented this discriminatory practice." Amended Complaint, ¶ 16.[2] Specifically, Plaintiffs raised three allegations of discrimination in their Amended Complaint. Plaintiffs allege that the "Defendant's maintenance of the Core Compensation System in 2004 and thereafter, in particular the practice of failing to

---

[2] Based on the use of the term "thereafter" in the original Complaint, the Agency moved to terminate the administrative process with regard to the 2005 annual pay adjustments since it was duplicative. In response, Plaintiffs withdrew the administrative complaint and amended the district court complaint to include class-wide allegations of discrimination based on the 2004 and 2005 pay adjustments.

provide annual increases in base salary and paying discretionary cash awards that are not included in base salary or in the computation of class members' retirement benefits, constitutes discrimination on the basis of age."  Plaintiffs' theories include "disparate impact on older FAA employees," and "disparate treatment of older FAA employees, in that the Defendant and the FAA are aware the practice compensates older employees less favorably, and notwithstanding their awareness, knowingly continue this discriminatory practice;" and 3) "maintenance of the above pay practices constitutes a continuing violation of the ADEA."  Amended Complaint, ¶¶ 29-31.  Defendant sought dismissal or, in the alternative, for summary judgment, because the allegations in the complaint were untimely filed and had not been administratively exhausted.  This Court initially denied the Defendant's motion.  See March 29, 2007 Order.  However, in light of the Ledbetter decision, the Court vacated its earlier decision and called for supplemental briefing regarding the impact of Ledbetter on the current action.

In Plaintiffs' Response, they now identify the allegedly discriminatory pay practice as "discretionary raises that are not included in the base pay and thus are not reflected in retirement benefits."  Plaintiffs' Response at 4-5.  More specifically, Plaintiffs assert that Ledbetter has no impact on any of their allegations except for Plaintiff Coghlan's individual allegations

relating to the 2004 annual pay adjustments.

For the reasons specified below, Defendant contends that the Plaintiffs' response contains erroneous interpretations of law and that dismissal, or summary judgment in Defendant's favor, is now appropriate.

### III. FACTUAL BACKGROUND

Effective March 12, 2002, all Federal Aviation Administration ("FAA") employees whose salaries after the initial conversion into the Core Compensation Pay Plan exceeded the maximum of the pay band were to receive any pay adjustments as lump sum payments. See Defendant's Exhibit J (HRPM, Comp-2.4C: Annual Pay Adjustments). At the same time, the FAA implemented a policy whereby an annual determination is made regarding whether or not the pay bands should be increased. All employees were notified through briefings and broadcast messages as well as through the policy website of the manner in which pay bands would be adjusted and of the consequences of reaching the pay band maximum for a position. See Defendant's Exhibits 9-11 and 13. In addition, pamphlets containing information about elements of the plan, including Chapters COMP-2.4C, 2.21C and 2.2C, were given to all employees. The information about the elements of the plan as well as the pay band minimums and maximums were also available through a website dedicated to communicating details about the plan. Id.; see also, Plaintiffs' Opposition to

Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment at 36, ¶¶ 16-20.

On November 9, 2004, the FAA administrator held a town hall meeting where she, in relevant part, advised all FAA employees, who attended the meeting either in person or via a web cast, or who read the statements on the employee website, that the latest market survey data did not support an increase of the pay bands.[3] On January 14, 2005, another announcement was made by the FAA Administrator that the pay bands would not be increased.[4] In other words, in addition to the compensation policies published in 2002 regarding the award of annual pay adjustments to those individuals who were at the top of their particular pay band, the Plaintiffs, who held non-technical positions, had notice as early as November 2004 that they would receive their annual pay adjustments as a lump sum payment because the pay bands would not be increased.

Prior to November 2004, each Plaintiff had received one or more notifications of personnel action (SF-50s) containing their annual salary. This gave them sufficient information to compare their annual adjusted salary to the published pay band chart for

---

[3] See http://www.faa.gov/news/speeches/news story.cfm?newsld=6035.

[4] See https://employees.faa.gov/news/employee_news/ adminmessage/message_archives_2005/index.cfm?print=go&adminMessag e=dsp_admin_arch_011405.cfm.

the year and to determine that they were at the pay band maximum under the pay rules published in 2002. See Defendant's Exhibits 14-15. In addition, the Plaintiffs received SF-50s stating that they were receiving lump sum awards. Id. In fact, Plaintiffs received no increases in their base pay in 2003, 2004, and 2005. See Plaintiffs' Statement Of Disputed Facts at 35, ¶ 15. Therefore, as admitted by Plaintiff Coghlan, for two years prior to filing his complaint in 2004, he was aware that "he and others suffered from the alleged discriminatory practice of awarding annual pay adjustments only as lump sum payments to employees at the maximum of their pay bands. See Defendant's Exhibit 4 at 2.

    IV.   LEDBETTER REQUIRES THE DISMISSAL OF PLAINTIFFS' CLAIMS

        A.   The Ledbetter Decision.

    In Ledbetter, the Plaintiff identified two employment practices. She first contended that each paycheck issued during the charging period was a separate act of discrimination. Ledbetter, 127 S. Ct. at 2167. The plaintiff also contended that the 1998 decision denying her a raise was "unlawful because it carried forward intentional discriminatory disparities from prior years." Id. Ledbetter did not allege that the Goodyear decision-makers acted with discriminatory intent either when they issued her checks during the charging period or when they denied her a raise in 1998. Id. Instead, she claimed that the paychecks were unlawful because they would have been larger based

on acts that occurred outside of the charging period.  Id. In analyzing Ledbetter's allegations, the Court reviewed much of the precedent which was discussed in support of Defendant's dispositive motions in the instant action, including Lorance v. AT&T Technologies, Inc., 490 U.S. 900 (1989).  In Lorance, when female workers were laid off due to low seniority, plaintiffs filed a suit challenging modifications to seniority rules in the collective bargaining agreement that were adopted in 1979.  The Court held that the plaintiffs' charge was untimely because it was not filed within the specified period after the adoption in 1979 of the new seniority rule.  Id. at 911 (holding that "[b]ecause the claimed invalidity of the facially nondiscriminatory and neutrally applied tester seniority system is wholly dependent on the alleged illegality of signing the underlying agreement, it is the date of that signing which governs the limitations period.").

In light of precedent, the Supreme Court in Ledbetter concluded that the "EEOC charging period is triggered when a discrete unlawful practice takes place" and that pay setting decisions constitute such a discrete act.  Ledbetter, 127 S.Ct. at 2165 and 2169.  The Court further concluded that a "new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from past

-8-

discrimination." Id.  Indeed, as clarified by the Court, Bazemore v. Friday, 478 U.S. 385 (1986), stands for the principle that "when an employer adopts a facially discriminatory pay structure . . . the employer engages in intentional discrimination whenever it issues a check to one of those disfavored employees." Ledbetter, 127 S.Ct. at 2174-75. (emphasis added)  However, a new charging period is not triggered when an employer issues paychecks pursuant to a system that is "facially nondiscriminatory and neutrally applied." Id.  The Court also concluded that, "[n]othing in Title VII supports treating the intent element of a disparate treatment claim any differently than the employment practice." Id. at 2171-72.  In other words, a Federal employee has the burden of initiating a discrimination complaint within 45 days as well as demonstrating that discriminatory animus was present within 45 days of the initiation.  See id.; Marrero-Gutierrez v. Molina, ___ F.3d___, 2007 WL 1765550 (1st Cir. June 20, 2007)(interpreting Ledbetter as requiring the limitation period for a Title VII claim for pay discrimination beginning with the first discrete act); Nelson v. University of Texas, ___F. Supp.2d___, 2007 WL 162832 (N.D. TX 2007)(interpreting Ledbetter as holding that a Title VII pay discrimination claim was not a continuing tort in which each lesser paycheck continued the discrimination, but rather a discrete wrong that occurred when compensation was set).  See

also Chardon v. Fernandez, 454 U.S. 6, 8 (1981) (holding that a claimant is "deemed to "know" or "learn" of a discriminatory act at the time of the act itself and not at the point that the harmful consequences are felt.").

    B.   Application of Ledbetter

In the present case, the FAA published the compensation policies that are being challenged as early as 1998, but the policies did not become generally applicable to FAA employees until they became effective on March 12, 2002.  This publication and implementation reflected a final agency decision regarding pay, i.e., those who were at the top of their pay band when the annual pay adjustments were issued would receive payment in lump sums.  See Defendant's Exhibits 9-10.  Thus, just as in Lorance and Ledbetter, the adoption of the compensation policy was the practice that should have triggered the duty to file a complaint. Nonetheless, Plaintiff Coghlan and Plaintiff O'Hara waited until 2004 and 2005, respectively, to initiate any contact with an EEO Counselor.  Their contact was more than two years too late since it clearly exceeded the 45-day time limitation from the effective date of the policy.  29 C.F.R. § 1614.105(a)(1).  They have raised no allegations that the initial adoption of the compensation policy was based upon intentional age discrimination nor have they raised any allegations that the FAA Administrator, who herself is over the age of 40 and determined whether or not

to raise the pay bands, intentionally discriminated against them based on age.[5]  Therefore, the entire complaint under all of their theories of discrimination including disparate impact, disparate treatment and continuing violation must be dismissed as untimely.

To circumvent the timeliness issue, Plaintiffs attempt to frame their present allegations of discrimination as being based on the "discriminatory pay raises not included in base pay amounts" received in 2004 and 2005.  See Plaintiffs' Response at 4-6.  Plaintiffs also attempt to focus on the Administrator's

---

[5] The Supreme Court has also recently refocused the analysis of when a plaintiff has alleged facts that can withstand a motion to dismiss.  See Bell Atlantic v. Twombly, ___ U.S. ___, 127 S.Ct. 1955 (2007).  In Twombly, the Court clarified the standards for evaluating whether a complaint satisfies Fed. R. Civ. P. 8.  The Court held that, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," id. at 1964-65; that "[f]actual allegations must be enough to raise a right to relief above the speculative level," id.; and that a plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief," id. at 1965, n.3.  In so holding, the Court rejected a literal reading of the Court's earlier statement in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed * * * unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  The Court explained that this "phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard." Id. at 1969.  In addition, the Court stressed that"[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management.'" Id. at 1959.  Instead, the Court admonished, courts should "tak[e] care to require allegations" that meet the Federal Rules' threshold pleading requirements.  Id.

statement on January 12, 2005, that the pay bands for all of the FAA's employees (young and old) would remain at the current levels.  However, the only reason the annual pay adjustments are not included in the base salary and the Administrator made such a statement is the adoption of the Compensation policy in March 2002.  In other words, their claim is no different from Lorance or Ledbetter.  In essence, Plaintiffs are contending that an event outside of the charge period, (i.e., the creation of a pay policy indicating that the Administrator has authority to raise the pay bands but that anyone at the maximum of the pay bands will receive their annual pay adjustments as a lump sum), is having a present effect on their salaries.  Under these circumstances, the Amended Complaint must be dismissed based on the Court's decision in Ledbetter.  Id. 127 S.Ct. at 2165, 2169 and 2174-75.

    Following Ledbetter, it is the pay decision and not the impact of the pay decision or the effect of the pay decision on the individual which triggers the time period for making an EEO Counselor contact under Section 1614.105(a)(1).  Id., 127 S.Ct. at 2165 (holding that "[b]ecause a pay setting decision is a discrete act, it follows that the period for filing an EEOC charge begins when the act occurs.").  Specifically, the Court determined that Ledbetter could not challenge the present pay disparity as an adverse effect of a past discrimination regarding

the denial of her pay raise in 1998. Id. at 2174-75; see also Nelson, supra, 2007 WL 162832 at *6 (interpreting Ledbetter as holding that a Title VII pay discrimination claim was not a continuing tort in which each lesser paycheck continued the discrimination, but rather a discrete wrong occurred when the compensation was established). Similarly, Plaintiffs in this case cannot challenge the allegedly discriminatory pay raises not being included in their base pay amounts or the denial of a pay raise in 2005, because these present-day effects are merely the result of the implementation of a facially neutral policy that became effective in 2002 regarding how annual pay adjustments would be made. As a result, the complaint must be dismissed as untimely.[6] Ledbetter, 127 S.Ct at 2165, 2169 and 2174-75.

Moreover, Ledbetter requires the dismissal of Plaintiffs'

---

[6] Even assuming, for the sake of argument, that the 2002 policies establishing pay setting rules did not trigger the need to initiate an EEOC charge, the complaint still must be dismissed as untimely. The Administrator gave notice at a town hall meeting on November 9, 2004, that the pay bands would not be raised for non-technical employees. This meeting was broadcast across the country, accessible via web cast and the text of the statement was available on the internet as well as the intranet. However, Plaintiffs did not contact an EEO Counselor regarding the 2005 annual pay adjustments until February 23, 2005. Their contact is more than three months after they knew that their pay bands would not be raised and more than three years after they suspected that there was discrimination related to the pay setting rules. Under these circumstances, the entire complaint under all of Plaintiffs' theories of discrimination (including disparate impact, disparate treatment and continuing violation) must be dismissed as untimely. 29 C.F.R. § 1614.105(a)(1).

disparate impact and continuing violation theories of discrimination.  Plaintiffs' argument that <u>Ledbetter</u> does not affect the viability of their disparate impact or continuing violation claim is without support.  Plaintiffs merely reference Mr. Coghlan's EEOC decision, which predates <u>Ledbetter</u>.  Because the EEOC had not the benefit of the Supreme Court's decision at the time that it initially considered the issue, the case offers no persuasive authority to support Plaintiffs' theory.  Although Plaintiffs are correct when they describe <u>Ledbetter</u> as a disparate treatment case, they are wrong to assume that the case has no bearing on other theories of discrimination.  <u>Ledbetter</u> reflects the Court's assessment of what constitutes a discrete employment practice triggering the need to initiate an EEOC charge.  The Court has specified that pay decisions constitute a practice that would trigger the need to initiate the EEOC process.  <u>Ledbetter</u>, 127 S. Ct. at 2165 and 2175 (establishing pay setting decisions as discrete acts and reaffirming <u>National Railroad Passenger Corporation</u> v. <u>Morgan</u>, 536 U.S. 101 (2002)).  The issuance of the FAA compensation policies in 2002 is a pay setting decision.  The compensation policies establish that an employee will receive a lump sum payment for any annual pay adjustments if his or her salary exceeded the pay band after conversion.  It is solely based on the application of these policies that Plaintiffs' base pay is what it is currently and

-14-

does not include the annual pay raises.  Moreover, in Ledbetter, the Court cited with approval its prior decision in Lorance. Thus, it was the adoption of the pay setting rules that triggered the need for Plaintiffs to initiate contact with an EEO counselor to challenge the practice that would follow.  Just as a failure to promote an employee stalls their pay on the date of the would-be promotion, so did the adoption in 2002 or the policy that froze pay bands unless a decision to change that aspect of pay were made in the future.  Lorance, 490 U.S. at 911 ("[b]ecause the claimed invalidity of the facially nondiscriminatory and neutrally applied tester seniority system is wholly dependent on the alleged illegality of signing the underlying agreement, it is the date of that signing which governs the limitations period."). Plaintiffs' failure to contact an EEO counselor within 45 days from March 12, 2002, when the policies were implemented, requires the dismissal of all allegations and theories of discrimination in their complaint which they seek to treat as renewed every year that their remuneration is not increased.  Such a theory cannot withstand the Court's analysis in Ledbetter. See id., 127 S.Ct. at 2165, 2169 and 2174-75.

V.   CONCLUSION

For the foregoing reasons and those previously set forth in support of Defendant's dispositive motions, and in light of the Supreme Court's decision in Ledbetter, the Court should dismiss Plaintiffs' individual and class complaints of disparate treatment, disparate impact and continuing violation discrimination regarding the 2004 and 2005 annual pay, because Plaintiffs failed to initiate the Equal Employment Opportunity process in a timely manner.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

OF COUNSEL:

Julia A. Rhodes, Esq.
Personnel & Labor Law Staff (AGC-30)
Office of Chief Counsel
Federal Aviation Administration
600  Independence  Ave., S.W., Rm. 1E100
Washington, DC  20591