UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MALACHY COGHLAN,
TIMOTHY O'HARA, et al.,

    Plaintiffs,

v.                                                                                        C. A. No. 05-1476 (PLF)

MARY E. PETERS, Secretary,

    Defendant.
_____/

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE
TO THE COURT'S MAY 30, 2007 ORDER REGARDING
*LEDBETTER v. THE GOODYEAR TIRE & RUBBER CO.***

Pursuant to the Court's May 30, 2007 Order, Plaintiffs herewith respond to Defendant's July 27, 2007 submission regarding the effect of the Supreme Court's decision in *Ledbetter v. The Goodyear Tire & Rubber Co.*, 550 U.S. __, 127 S.Ct. 2162 (2007), on this case. For convenience, Plaintiffs refer to the Defendant as "the FAA."

1. The FAA asserts (Response at 1-2 and n.1) that the fact that Coghlan's individual complaint may have been untimely under *Ledbetter* means that, under the "single filing rule," it must be assumed A) that no one in the class Coghlan and O'Hara purport to represent has filed a timely charge with respect to the January 2004 pay adjustment, and B) that even if another employee had filed a timely charge, that charge "would not have served the purposes of putting the Agency on notice of allegations regarding a class." Response at 2, n.1.

First, as Plaintiffs' July 6, 2006 *Ledbetter* submission notes, Coghlan's individual complaint **may** have been untimely. Whether it actually was should await further factual development. The Department of Transportation Office of Civil Rights EEO Counselor's Report dated October 19, 2004 (Exhibit 3 to the FAA's motion to dismiss) states that

Coghlan told the counselor he "learned about the disparate treatment for those over 40 on June 28, 2004," and made his initial contact with the Office of Civil Rights on August 10, 2004, 45 days after June 28, 2004. If he could not reasonably have known of possible age discrimination until June 28, it is possible his 2004 complaint was timely.[1] Coghlan is presently serving in the Armed Forces and unavailable to provide an affidavit on this point.

Second, contrary to FAA's assertion that no one in the purported class filed a complaint with respect to the 2004 pay decision, at least one other employee, Tim O'Hara, filed a complaint in 2004 that was also dismissed as untimely. O'Hara contacted an EEO counselor on July 2, 2004. Exhibit A. Upon information and belief, more than two hundred other employees contacted the EEO office in 2004 about the same issue. Plaintiffs do not, at this time, have written records of these other employees' EEO contacts. Exhibit B.

Moreover, the FAA can hardly argue that it "was not on notice of allegations regarding a class," since its own labor relations lawyers acknowledged the existence of a class complaint based on the 2004 pay decision. Exhibit C.

Apart from these factual flaws underpinning the FAA's argument about the "single filing rule," application of the rule does not mean that a class claim cannot be made with respect to the 2004 pay decision. The single-filing rule was developed by courts as an exception to the requirement of exhaustion of administrative remedies. *Horton v. Jackson Cnty Bd. of Cnty Comm'rs*, 343 F.3d 897, 899 (7th Cir. 2003). In the

---

[1] See 29 CFR Section 1614.105(a)(2), authorizing an agency or the EEOC to extend the 45 day limit when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, **"that he or she did not know and reasonably should not have known that the discriminatory practice occurred,"** that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the EEO counselor, **or "for other reasons considered sufficient by the agency or the Commission."** (emphasis added).

circuits that follow the rule, its application allows plaintiffs who have not filed with the EEOC to join a lawsuit with other plaintiffs who have exhausted EEOC administrative processes, provided the claims are substantially similar and the charge itself gave notice of its "collective nature." *White v. BFI Waste Services*, 375 F.3d 288, 293 (4th Cir. 2004). The purpose of the rule is to avoid duplicative administrative filings, because "[i]f it was impossible for the EEOC to effectuate a settlement of the original plaintiffs' claims, there is no reason to believe that the EEOC would be successful in settling [later intervenors'] claims." *Foster v. Gueory*, 655 F.2d 1319, 1323 (D.C. Cir. 1981).[2]

This court, along with several circuits and other lower courts, have applied the rule to filing lawsuits within the limitations period of the discrimination laws, as well as to initiating EEO administrative proceedings. See *White*, 375 F.3d at 293-294 (rule not yet adopted in 4th Circuit; noting rule allows plaintiffs who have not exhausted to join in an existing lawsuit, and criticizing plaintiff White for not joining an earlier lawsuit and for suing on his own behalf); *Campbell v. AMTRAK*, 163 F.Supp.2d 19, 25-26 (D.D.C. 2001) (citing cases).

In this case, other employees filed with the DOT OCR in 2004 and did not pursue their individual claims after Coghlan filed his class complaint in September 2004. These employees' claims may be pending in the DOT OCR; their status can be gleaned in discovery.[3] Still other employees did not file individual claims but are within the class

---

[2] EEOC guidance for federal agency managers and employees reflects the same goal. Under EEOC Management Directive 110, Chapter 8, Part III, Section C., "an individual complaint that is filed before or after the class complaint is filed and that comes within the definition of the class claims will not be dismissed but will be subsumed within the class complaint….If a class complaint is dismissed, the individual complaint may still proceed, unless the same or another basis for dismissal applies….[C]lass members may not proceed unless they have timely filed individual complaints." See, http://www.eeoc.gov/federal/md110.html.

[3] According to Plaintiff O'Hara's declaration, Exhibit B to this reply, OCR may have dismissed all the complaints filed in 2004.

Coghlan attempted to represent when he filed his 2004 complaint. As to those employees, the single file rule should be applied to allow their claims to be considered along with the class claims regarding the January **2005** pay decision.

*Campbell v. AMTRAK*, 163 F.Supp.2d 19 (D.D.C. 2001), cited by the FAA (Response at 2, n.1), does not support the FAA's position that no 2004 claims survive. In *Campbell*, Judge Sullivan denied AMTRAK's motion to dismiss a class-wide race discrimination claim. He agreed with the reasoning of the Eleventh, Fifth and Eighth Circuits, that plaintiffs who had filed individual EEOC charges could not ignore their own limitations periods for bringing suit and rely instead on another plaintiff's lawsuit. "Plaintiffs should not be able to revive stale claims to the detriment of the defendant." 163 F.Supp.2d at 26. Judge Sullivan rejected the approach of the Sixth Circuit and some lower courts that would have applied the single file rule to allow a plaintiff who had filed an administrative complaint to "piggy back" onto another plaintiff's lawsuit -- an approach that would extend the rule to plaintiffs who had filed charges as well has those with similar or identical claims who had not filed charges (see *Horton*, *supra*). The reasons Judge Sullivan gave for his holding, however, do not apply here. Here, there are no "stale" claims of which the FAA was unaware. Plaintiffs are not seeking to "undermine" the statute of limitations. 163 F.Supp.2d at 26.

Accordingly, regardless of this Court's determination with respect to Coghlan's individual complaint about the 2004 pay increase, the class allegations with respect to 2004 should be allowed to proceed.

2. The FAA next argues that Plaintiffs waited too long – until 2004 and 2005 – to initiate contact with an EEO counselor. Response at 10-15. The FAA contends that they should have contacted a counselor in 2002 when FAA's new compensation policies went

into effect. The problem with the FAA's argument is that neither the Plaintiffs nor the other employees who complained about the pay practice at issue became aware, until the January 2004 pay raise, of the effect of this raise on them and their total compensation. Thus, FAA cannot seriously argue (as it does at page 10 of its Response) that its employees should have sued for age discrimination upon FAA's initial announcement of its new policies. Here, both Coghlan and O'Hara alleged that the failure to include the January 2004 and January 2005 increases in their base pay, a feature of the FAA's new policies, had the effect of reducing their total compensation as compared to younger employees. Knowledge of the effect of those pay increases triggered their contact with EEO counselors. They were not obligated to analyze the potential age discriminatory effect of the new policies any earlier than when they learned of the effects on them.

The Supreme Court's decisions in *Ledbetter* and *Lorance v. AT&T Technologies, Inc.*, 490 U.S. 900 (1989) are not to the contrary, notwithstanding the FAA's assertions (Response at 10-15). *Ledbetter*'s majority opinion acknowledged that a discriminatory policy may be adopted and not executed, at least with respect to a particular employee or group of employees, until a period of time has run from the date of adoption of the policy. Until the practice is "executed," "the employee has no cause of action." *Slip op.* at 11-12, note 3.

Interpreting *Bazemore v. Friday*, 478 U.S. 385 (1986), the Supreme Court noted that an action not comprising an employment practice that is alleged to be intentionally discriminatory is not a discrete and actionable act of discrimination "just because it is related to some past act of discrimination." *Slip op.* at 17. Coghlan and O'Hara here allege precisely the opposite of the Supreme Court's hypothetical. That is, they point to two discrete acts – the January 2004 and January 2005 pay decisions – as the basis for

5

their claims. The fact that these two events were incident to implementation of the FAA's new policies does not, under *Ledbetter*, mean that the employees should have anticipated these events when the new policies were adopted and sued back then to overturn them.

Nor does *Lorance* require dismissal of Plaintiffs' claims. As Justice Alito's majority opinion notes in *Ledbetter*, in *Lorance*:

> We noted that the plaintiffs had not alleged that the new seniority rule **treated men and women differently** or that the rule **had been applied in a discriminatory manner**. Rather, their complaint was that the rule was adopted originally with discriminatory intent….And as in *Evans* and *Ricks*, we held that the EEOC charging period ran from the time when the discrete act of alleged intentional discrimination occurred, not from the date when the effects of this practice were felt." *Slip op.* at 7 (citations omitted, emphasis supplied).

Plaintiffs here are not in a position to argue that FAA's policies were, in the words of the Supreme Court, "adopted originally with discriminatory intent." Rather, Plaintiffs allege that a feature of those policies "treats [older employees] differently" and, as a result of its disparate impact, is "applied in a discriminatory manner." Thus, the holding in *Lorance* does not render their claims untimely.

3. The FAA's *Ledbetter* response alleges facts with which Plaintiffs take issue. See Exhibit B, Declaration of Timothy O'Hara. For example, the first paragraph of Part III on page 5 suggests that the employees understood how pay band maximums would be adjusted and the consequences for each individual of being paid a lump sum instead of receiving an increase in base pay, and that therefore Plaintiffs should have sued earlier than they did. Plaintiffs dispute that employees understood the consequences of the new policies upon their adoption or as a result of "briefings and broadcast messages." The FAA's reliance on a November 2004 town hall meeting to discuss pay (Response at 6) likewise does not establish that employees understood these consequences, or that the

6

January 2004 and/or January 2005 discretionary pay increases would disadvantage older employees. (Coghlan, O'Hara and other employees had already filed EEO charges by this point in any event). The FAA seems to suggest that the employees should have filed charges regarding the January 2005 pay increase in November 2004, after the town meeting (Response at 7-8), a suggestion that defies logic and would strain even *Ledbetter* beyond its limits. The employees are just that – employees – not economists or statisticians or experts in pay systems who should have been expected to figure out every consequence of the application of a policy to them.

## CONCLUSION

For the foregoing reasons, and for the reasons explained in Plaintiff's July 6, 2007 submission regarding *Ledbetter*, the Court should not dismiss this action. In addition, the Court should allow claims based on the January 2004 pay increase to proceed.

Respectfully submitted,

_____/s/_____
Barbara Kraft   D. C. Bar No. 358563
Kraft Eisenmann Alden, PLLC
1001 Pennsylvania Ave., NW
Suite 600
Washington, DC  20004
(202) 783-1391
bkraft@kea-law.com
Counsel for Plaintiffs