UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | ) | |
|---|---|---|
| TIMOTHY O'HARA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1476 (PLF) |
| | ) | |
| RAY LAHOOD, Secretary, | ) | |
| United States Department of Transportation,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

OPINION

Plaintiff Timothy O'Hara has moved pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure to reopen this case, in which the Court entered judgment for the defendant in 2008 after determining that the claims of Mr. O'Hara and a second plaintiff, Malachy Coghlan, were barred by the Supreme Court's decision in <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 550 U.S. 618 (2007). Mr. O'Hara argues that the enactment of the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 ("Lilly Ledbetter Act"), warrants *vacatur* of the Court's order entering judgment for the defendant. He also has moved for leave to amend his complaint to name an additional plaintiff, Lockett K. Yee.

Upon careful consideration of the parties' arguments, the relevant statutory and case law, and the entire record in this case, the Court denied Mr. O'Hara's motion to reopen this

---

[1] The amended complaint names Norman Y. Mineta, former Secretary of Transportation, as the party defendant. The Court substitutes the current Secretary of Transportation, Ray LaHood, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

case and his motion to name Mr. Yee as a new plaintiff by Order of September 30, 2010. This Opinion sets forth the reasoning underlying that Order.

## I. BACKGROUND

Malachy Coghlan filed the original complaint in this case in 2005, naming himself as a representative of a putative class of similarly situated persons and alleging that his employer, the Federal Aviation Administration, an agency within the United States Department of Transportation, had discriminated against him and other FAA employees on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). See Complaint ¶ 1. Timothy O'Hara was named as a co-plaintiff and second potential class representative in an amended complaint filed in December of 2005. In January of 2006, the Secretary of Transportation filed a motion to dismiss the plaintiffs' complaint or, in the alternative, for summary judgment. The defendant argued, among other things, that the plaintiffs had failed to contact an Equal Employment Opportunity Counselor "within 45 days of the date of the matter alleged to be discriminatory," as they were required to do under applicable regulations. See Defendant's Renewed Motion to Dismiss or, In the Alternative, for Summary Judgment at 19-24. The Court denied the defendant's motion on March 29, 2007. See Coghlan v. Peters, Civil Action No. 05-1476, Order (D.D.C. Mar. 29, 2007).

On May 29, 2007, the Supreme Court issued its opinion in Ledbetter, ruling that where a plaintiff claims that her employer determined her rate of pay in a discriminatory manner, the applicable statute of limitations begins to run at the time that the "pay-setting decision" occurs; it is not triggered anew with the issuance of each paycheck whose amount was determined by the "pay-setting decision." Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S.

at 621, 628.  Because the Supreme Court's decision had implications for Mr. Coghlan's and Mr. O'Hara's claims, this Court vacated its order denying the defendant's dispositive motion and ordered the parties to submit supplemental memoranda assessing the impact of Ledbetter on the claims of the plaintiffs in this case.  See Coghlan v. Peters, Civil Action No. 05-1476, Order (D.D.C. May 30, 2007).

On March 31, 2008, the Court concluded that the plaintiffs' claims were barred under Ledbetter and issued an order entering judgment for the defendant.  That March 31, 2008 Order was explained in an Opinion issued on May 28, 2008.  See Coghlan v. Peters, 555 F. Supp. 2d 187 (D.D.C. 2008).  The Court determined that the most recent "pay-setting decisions" complained of by Mr. Coghlan and Mr. O'Hara were made on or about January 11, 2004, and November 9, 2004, respectively.  See Coghlan v. Peters, 555 F. Supp. 2d at 199.  Under the logic of Ledbetter, those dates marked the start of the 45-day period during which the plaintiffs had been required to initiate administrative proceedings challenging the relevant pay-setting decision, which the plaintiffs had failed to do.  Id. at 199-202.  The Court specifically rejected as foreclosed by the Supreme Court's decision in Ledbetter the plaintiffs' argument that "each paycheck [affected by a challenged pay-setting decision], even if not accompanied by discriminatory intent, triggers a new EEOC charging period during which the complainant may properly challenge [paychecks within that charging period and] any prior discriminatory conduct that impacted the amount of that paycheck."  Id. at 203 (internal quotation marks and citation omitted).

In January of 2009, Congress passed and the President signed the Lilly Ledbetter Act, overturning the Ledbetter decision.  The Act amended the ADEA, among other civil rights laws, to provide:

3

> For purposes of [the ADEA], an unlawful practice occurs, with respect to discrimination in compensation in violation of this Act, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

Pub. L. No. 111-2, § 4 (amending 29 U.S.C. § 626(d)). "In other words, [under this Act] each paycheck resulting from the 'original compensation decision or other practice' triggers a new filing period" during which a claim challenging the "original compensation decision" may be timely brought, even if the compensation decision itself was made long before. Johnson v. District of Columbia, 632 F. Supp. 2d 20, 22 (D.D.C. 2009). "[T]he [Lilly Ledbetter Act] effectively nullified the Ledbetter decision." Id. (quoting Reed v. Kucera, Civil Action No. 08-3132, 2009 WL 1451568, at *2 (D. Neb. May 20, 2009)) (internal quotation marks omitted). Moreover, Congress specified that the statutory amendments effected by the Act, including those to the ADEA, would "take effect as if enacted on May 28, 2007 and apply to all claims of discrimination in compensation under . . . [the ADEA] . . . that are pending on or after that date." Pub. L. No. 111-2, § 6.

On February 9, 2009, the plaintiffs filed a motion to reopen this case in light of the passage of the Lilly Ledbetter Act. While that motion was pending, Mr. Coghlan entered into a settlement agreement with the defendant that resolved his claims. See Notice of Filing, Docket No. 35, at 1 (filed Aug. 25, 2009). In response, Mr. O'Hara filed the pending motion to name Lockett K. Yee as a new co-plaintiff.

On September 15, 2009, the Court denied the plaintiffs' motion to reopen the case without prejudice, asking the parties to file new motion papers updated to account for recent case law analyzing the impact of the Lilly Ledbetter Act. See O'Hara v. LaHood, Civil Action No. 05-1476, Minute Order (D.D.C. Sept. 15, 2009). The plaintiff then filed a renewed motion to reopen, which is now ripe for decision.

## II. DISCUSSION

The plaintiffs have moved under Rule 60(b)(6) of the Federal Rules of Civil Procedure for *vacatur* of the Court's final order of March 31, 2008, entering judgment in favor of the defendant. The relevant portion of the Rule provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> * * *
>
> (6) any other reason [aside from those enumerated in subparagraphs (1) through (5)] that justifies relief.

FED. R. CIV. P. 60(b). Rule 60(b)(6) "should be only sparingly used," and then "only in extraordinary circumstances." Kramer v. Gates, 481 F.3d 788, 791 (D.C. Cir. 2007).

Mr. O'Hara contends that the passage of the Lilly Ledbetter Act and its retroactive amendment of the ADEA constitute "extraordinary circumstances" warranting *vacatur* of the final judgment for the defendant previously entered in this case. Plaintiff's Renewed Motion to Reopen ("Mot.") at 4. In opposition, the defendant argues, among other things, that the Supreme Court's decision in Plaut v. Spendthrift Farm, Inc., 514 U.S. 211 (1995), prohibits the reopening of this case in response to the changes in the law effected by the

Lilly Ledbetter Act. Defendant's Opposition to Plaintiff's Renewed Motion to Reopen ("Opp.") at 2 n.1. The Court agrees with the defendant.

In Plaut, the Supreme Court confronted a set of circumstances in many ways similar to those presented here. On June 20, 1991, while the securities fraud claims of the Plaut plaintiffs were pending in the district court, the Supreme Court decided Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991), which altered the law governing the statute of limitations applicable to the claims of the Plaut plaintiffs. See Plaut v. Spendthrift Farm, Inc., 514 U.S. at 213. Applying Lampf, the district court ruled that the Plaut plaintiffs' claims were untimely and dismissed their complaint in August of 1991. Id. In December of 1991, Congress overruled Lampf by statute, providing that the statute of limitations applicable to securities fraud claims brought in a given jurisdiction would be "the limitation period provided by the laws applicable in the jurisdiction . . . as such laws existed on June 19, 1991" — the day prior to the issuance of the Lampf decision. Federal Deposit Insurance Corporation Improvement Act of 1991, Pub. L. No. 102-242, § 476. Congress also ordered the reinstatement on motion of "any private civil action [involving claims like those of the Plaut plaintiffs] that was commenced on or before June 19, 1991," "dismissed as time barred subsequent to June 19, 1991," and "timely filed under the limitation period provided by the laws applicable in the jurisdiction . . . as such laws existed on June 19, 1991." Id.

The Supreme Court in Plaut struck down the portion of the FDIC Improvement Act that ordered the reinstatement of claims dismissed as untimely, finding that it violated the separation of powers by permitting Congress to force the reopening of closed cases and to alter the substantive law to be applied in a judicial decision that had already become final. The Court's pronouncement was unequivocal: "Having achieved finality, . . . a judicial decision

becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was." Plaut v. Spendthrift Farm, Inc., 514 U.S. at 227 (emphasis in original). The framers of the Constitution felt "a sharp necessity to separate the legislative from the judicial power, prompted by [a] crescendo of legislative interference with private judgments of the courts," id. at 221, and the separation-of-powers doctrine thus prohibits "legislative interference with judicial judgments." Id. at 228.

As in Plaut, Mr. O'Hara's complaint in this case was dismissed in the wake of a Supreme Court decision that altered the law applied to determine the timeliness of his claims. Congress legislatively nullified that decision and explicitly made that nullification retroactive and applicable to cases pending at the time the Ledbetter decision was released. Unlike the FDIC Improvement Act, however, the Lilly Ledbetter Act does not purport to require the reinstatement of claims extinguished in the wake of the disapproved Supreme Court precedent. Indeed, President Obama, after signing the Lilly Ledbetter Act, observed that it could not revive the claims of Lilly Ledbetter herself. See Aneja v. Angeliades, Inc., Civil Action No. 05-9678, 2010 WL 199681, at *3 n.2 (S.D.N.Y. Jan. 12, 2010) (citing White House Press Release, Remarks by the President upon Signing the Lilly Ledbetter Bill (Jan. 29, 2009)).

According to Mr. O'Hara, it is precisely this distinction that permits his claims to be resurrected, while those of the Plaut plaintiffs remained foreclosed. Unlike the FDIC Improvement Act, the Lilly Ledbetter Act does not *require* courts to reopen closed cases and so, he argues, it does not run afoul of the constitutionally mandated separation of powers. Mr. O'Hara suggests that while Congress could not order the reinstatement of his claims, this Court could nevertheless *permit* that result. In his view, in recognition of Congress' obvious

7

disapproval of the Ledbetter decision, the Court could exercise its discretion under Rule 60(b)(6) to vacate its prior judgment and allow Mr. O'Hara the benefit of the Lilly Ledbetter Act's retroactive effect. See Plaintiff's Reply to Defendant's Opposition to Plaintiff's Renew Motion to Reopen Case ("Reply") at 1. The Court does not believe that Plaut permits such an exercise of discretion.

Contrary to the plaintiff's argument, the Supreme Court in Plaut did not so roundly condemn the FDIC Improvement Act simply because that statute made the reinstatement of extinguished claims mandatory. It did so because the separation of powers is offended when judicial "acts [are] subject to legislative correction." Plaut v. Spendthrift Farm, Inc., 514 U.S. at 223. The constitutional violation identified by the Plaut Court was not simply the nullification of final judgments by the legislature, but "legislative interference" with those judgments. Id. at 228. If this Court were to set aside its prior judgment in response to the passage of the Lilly Ledbetter Act, Congress would not have negated that judgment directly, but it certainly would have *interfered* with that judgment — by indicating a preference for an outcome different from the one dictated by the law as understood by the courts on March 31, 3008, and influencing this Court to adopt its preferred outcome.

In concluding that Plaut does not permit courts to use their discretion under Rule 60(b)(6) to acquiesce in the congressional overruling of decided cases, this Court is in accord with the decisions of other courts regarding the propriety of reopening a case under Rule 60(b)(6) in response to a change in statutory law. See Norgaard v. DePuy Orthopaedics, Inc., 121 F.3d 1074, 1076 (7th Cir. 1997) (after Plaut, the "door was closed" on "the possibility that 'a clear and authoritative change in governing law' would justify reopening" a case under Rule 60(b)(6)); Raven v. Oppenheimer & Co., Inc., 74 F.3d 239, 243 n.9 (11th Cir. 1996) (musing in

8

dicta that "[w]hether the separation of powers problem [in Plaut] may somehow be avoided by seeking Rule 60(b)(6) discretionary relief premised upon a new congressional pronouncement seems doubtful"). The plaintiff's sole argument under Rule 60(b)(6) is that "[t]he strong Congressional intent underlying [the Lilly Ledbetter Act] constitutes 'extraordinary circumstances' justifying relief from the final judgment of this Court." Reply at 10. But such an argument would be applicable any time Congress overturned Supreme Court precedent by enacting a retroactive statute. If reopening under Rule 60(b)(6) were justified in every such instance, then Congress would in effect achieve what Plaut said it could not — the rescission of any final judgments entered in reliance upon the disfavored court ruling. If, on the other hand, the passage of a retroactive statute negating the effects of a Supreme Court decision does *not*, in and of itself, constitute "extraordinary circumstances" warranting the grant of relief under Rule 60(b)(6), then Mr. O'Hara has failed to explain why his case merits special consideration.

Contrary to Mr. O'Hara's contention, no decision from this Circuit issued in the last fifty years has "recognized that Congress' change in law directly applicable to a final judgment can satisfy the requirement of extraordinary circumstances justifying reopening a case under Rule 60(b)(6)." Mot. at 4. The case cited by the plaintiff, Stanford v. Potomac Elec. Power Co., Civil Action No. 04-1461, 2007 WL 219991 (D.D.C. May 25, 2007), did not so hold. Rather, in Stanford, Judge Walton summarized and then distinguished the holdings of two other cases in which a "court agreed that the statutory change in law satisfied the requirement of extraordinary circumstances justifying relief under Rule 60(b)(6)." Stanford v. Potomac Elec. Power Co., Civil Action No. 04-1461, 2007 WL 219991, at *3 (citing In re Pacific Far East Lines, Inc., 889 F.2d 242 (9th Cir. 1989) and McGrath v. Potash, 199 F.2d 166 (D.C. Cir. 1952)). Both of those opinions, the Court notes, were issued long before the Supreme Court's decision in

9

Plaut. Furthermore, the court of appeals' decision in McGrath concerned the *vacatur* of a final order entering a permanent injunction, a class of final judgments to which the reasoning of Plaut does not apply. See Miller v. French, 530 U.S. 327, 344 (2000) (ruling that "[p]rospective relief under a continuing, executory decree remains subject to alteration due to changes in the underlying law").

Finally, the plaintiff has cited — and the Court is aware of — no case in which a court, responding to the passage of the Lilly Ledbetter Act, has exercised its discretion under Rule 60(b)(6) to vacate a final judgment no longer subject to appeal. At least one court has vacated an interlocutory order in a case that was still pending at the time the Act was passed, see Johnson v. District of Columbia, 632 F. Supp. 2d at 21, 23; at least one has reinstated claims in a case that was pending on appeal when the Act took effect, see Mikula v. Allegheny County of Pa., 583 F.3d 181 (3d Cir. 2009); one has granted a plaintiff's motion under Rule 59(e) to amend a final judgment that was still appealable at the time the motion was filed. See Tomlinson v. El Paso Corp., Civil Action No. 04-2686, 2009 WL 2766718 (D. Colo. Aug. 28, 2009). None of these actions was exceptional, as it is routine for changes in the law to be applied to cases that are still pending at the trial or appellate level at the time the change occurs. Unfortunately for Mr. O'Hara, the judgment in his case was final and not subject to appeal when the Lilly Ledbetter Act took effect. In our judicial system, to disturb the finality of such a judgment in a contested case under Rule 60(b)(6) is exceptional, and disfavored. See, e.g., Kramer v. Gates, 481 F.3d at 791. To do so in response to retroactive statutory amendments is, under Plaut, impermissible.

## III. CONCLUSION

For the foregoing reasons, the plaintiff's motion to reopen this case was denied by Order of September 30, 2010, and all other pending motions were denied as moot.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: December 23, 2010